160 A.2d 586 (1960)
Deborah Eldredge DU PONT, Deborah Eldredge duPont, next friend of Deborah Helen duPont, a minor child, Henry Laurence duPont, a minor child, and Harriet Nicole duPont, a minor child, Plaintiffs,
v.
William Henry DU PONT, Defendant.
Civ. A. No. 1168.
Court of Chancery of Delaware, New Castle.
March 31, 1960.
*587 Daniel L. Herrmann and William Duffy, Jr., of Herrmann & Duffy, Wilmington, and Laurence H. Eldredge, Philadelphia, Pa., for plaintiffs.
William S. Potter and James Latchum, of Berl, Potter & Anderson, Wilmington, for defendant.
SEITZ, Chancellor.
This is the decision after trial of the separate issue as to whether the defendant-husband's remainder interests under the three spendthrift trusts involved would be available either through action by the defendant or by judicial process to meet any separate maintenance order which might be entered for the plaintiffs. The basis for this trial is found in the earlier opinion in this case, DuPont v. DuPont, Del. Ch., 157 A.2d 250.
The plaintiffs' evidence showed that the defendant could borrow up to $75,000 over the next three years from Legatees Funding Corporation. This money would be advanced in monthly installments. In return, defendant would be charged a commitment fee of $3,500, would pay 6% interest and a 2% service charge, both figured on the increasing debit balance. Defendant would also have to maintain life insurance in amounts sufficient to cover the debit balance. The Corporation would advance the premiums. The loan would be repayable at the death of the income beneficiary. The defendant would be free to repay the interest or principal at any time. However, his present unfettered assets and income are minuscule.
The court had the impression that the president of Legatees Funding Corporation testified that as a condition to the granting of the loan an order would have to be entered by this court setting aside the spendthrift clause in the trusts involved. However, a reading of the testimony reveals that this is apparently not required. Moreover, the suggested implementing form of order submitted by plaintiffs' counsel does not so provide and presumably the corporation would lend the money on the conditions incorporated therein. If my assumption is incorrect I should be notified forthwith.
Defendant argues that the cost to borrow the sum involved is unreasonable. He notes that the amount due at the end of the three year period, assuming $75,000 was advanced, would amount to approximately $95,000. He also points out that Mr. William duPont, the income beneficiary, is 64 years of age and has a life expectancy of about 16 years; that at the end of such period the $75,000 would produce an indebtedness of somewhat over $300,000, assuming that defendant paid nothing on account.
Defendant tries to make some point of the limited capital resources of Legatees Funding Corporation but I think that of no moment here. Defendant would be no worse off if the Corporation would not continue to lend money. Defendant also points out that the present loan would only deal with a three year period. However, the president of Legatees Funding Corporation stated that it might advance additional money at the end of the three year period. But, in any event, this would hurt only the plaintiffs. Defendant advances some arguments as to why the continuation of loans would not be desirable even from plaintiffs' viewpoint. The court is not impressed with this barren solicitude for plaintiffs.
*588 If this 30 year old defendant survives his father, based on present values and the same number of remainderman, he will then receive about $65,000,000. If his aunt (who is 66) predeceases his father and if defendant survives his father, he will receive an additional $65,000,000. If defendant predeceases his father at least $65,000,000 will belong to the minor plaintiffs and any additional issue of defendant.
It is difficult for this court to say at this stage that the plan suggested by plaintiffs by which defendant could borrow up to $75,000 is unreasonable as a matter of law. I pass over the wife for the moment and consider only the minor children. These three children are 10, 5 and 2 years of age respectively. If their need is demonstrated it may be that the sums advanced in the next few years will be worth much more to them than far larger sums received later. Nor can the court say that the wife's substantial needs are to be ignored if it be determined that the defendant left her without legal justification.
But defendant argues that the loan which the Legatees Funding Corporation would make would be usurious, citing Delaware cases. It is not clear whether the loan would be made in New York or Delaware. However, no matter which law controls, it would appear that the test would be whether the services which are to be rendered to support the service charge are beyond those normally performed in making a routine loan and whether they bear some reasonable relation to the charge made therefor. The intent of the parties is also relevant.
The president of the Legatees Funding Corporation testified that the 2% charge would be for the following services: holding and paying the insurance premiums on policies it presumably would obtain for defendant, filings with the financial institution that is accommodating the Corporation, the labor of replacing the loan, as it may become necessary, with another institution or an additional institution.
Considering the nature of this case and the continuing problem of placing this obligation and securing life insurance for the defendant and the other incidental services mentioned by the witness, it is far from clear that this charge would be stricken down by either the New York or the Delaware courts. In any event, the matter is sufficiently doubtful that in this situation the doubt should not be resolved in favor of this defendant. The Corporation is willing to lend the money and take its chances. That is the important fact because it is the one to suffer in the event the transaction is later determined to violate the usury statute, 6 Del.C. § 2301 et seq. Of course, if the transaction were clearly usurious this court of equity would not enter an order which would in effect require the defendant to violate the usury statute. This is not such a case. I therefore conclude that consideration of the availability of the loan to defendant should not be rejected as a matter of law because of the possibility that the service charge might later be determined to be usurious.
Defendant next argues that Paragraph 3 of plaintiffs' proposed order in effect recognizing the feasibility of the loan should not be adopted unless and until it is determined that support will be awarded. If it is not so, it should be made clear that this is merely a determination to be implemented if and when it is decided that defendant is obligated to make payments of the size which would in effect require defendant to make the loan here discussed.
Defendant says that Paragraph 3 would strike down the spendthrift clauses at a stage prior to execution. I disagree. The language is directed solely against defendant personally. It in no way purports to apply directly to the trusts or trustees. It is a classic in personam order. To remove any doubt, I may say that I do not believe the court has the right to strike down the spendthrift provisions at this stage at least under the present circumstances. Moreover, no implication concerning the result *589 which might be reached at a later stage is to be drawn from the language employed.
Defendant offered evidence which showed that certain banks and lending institutions would not lend defendant money on the basis of his interest under the trusts. This evidence is of limited value so long as he can borrow on reasonable terms in relation to plaintiffs' proved needs.
In view of the evidence concerning the Legatees Funding Corporation as implemented by the proposed order, I conclude that I cannot decide as a matter of law that defendant cannot reasonably raise up to $25,000 a year for the next three years. Whether the court will in the future enter a support order which will in effect require defendant to make the loan, assuming defendant's duty is established, will depend upon the extent and urgency of the need and the availability of other income which might be legally committed from any source to fulfill defendant's obligation.
In view of the approach just adopted, the next question is whether the court should go ahead and decide whether defendant's interest in the various trusts are subject to execution process or any other form of equitable remedy, such as the impressment of a lien.
Assuming that plaintiffs proved their right to support and further assuming that defendant's trust interests could be reached by execution process without undue sacrifice, the court would consider what could be realized therefrom in fixing the amount of the support payments. But I think it clear that defendant's trust interests could not now be sold without undue sacrifice. This is so whether his interests be considered as vested or contingent  a point on which the parties disagree. The reason is found in this court's prior opinion and in the Maryland case of Reilly v. Mackenzie, 151 Md. 216, 134 A. 502, 505, 48 A.L.R. 778. While that case is not factually the same, the following language is pertinent:
"But, so far as the value of the interest is concerned, there can be no subtantial difference between a remainder which is technically vested, but liable to be defeated by the death of the remainderman before the death of the life tenant, and a vested interest in a contingent remainder; the contingency being the survival of the remainderman after the death of the life tenant. A purchaser of either interest would take exactly the same chance of enjoying the possession of the property, and the risk would be no greater in the one case than in the other."
Thus, this court would not, absent an extreme case, require that defendant's interests be sold where the bidding would obviously be seriously depressed because of the indefinite date for realization on such interests, if at all. Plaintiffs' counsel tacitly concede this fact in their brief.
Plaintiffs say that it cannot be assumed that defendant will not honor a support order which takes into consideration his interests in the trusts. They say that if defendant does not pay then, "the plaintiffs' position will be that the court should oblige the defendant to borrow against his future interests rather than to expose them to sale". The court has heretofore ruled that in fixing the amount of an allowance to plaintiffs it can only consider those assets of defendant which can be reasonably realized on. Thus, we are now at the last stage of plaintiffs' argument, and it has been resolved by my decision on the first point in this opinion, i. e., that defendant may be required to borrow money.
Plaintiffs suggest that the court could impress a lien against defendant's trust interests, presumably to secure payment of the support allowed if and when defendant becomes entitled to the corpus. Assuming that such could be done, it would not produce any money for plaintiffs now and that is what they seek by their complaint. I therefore conclude that a lien should not be impressed in this case. No question of securing *590 a present monetary advance is involved.
The court rules that if plaintiffs prove their right to and need for support, in fixing the amount thereof the court will assume that no money is available through execution process or lien against defendant's interests in the trusts involved.
An order incorporating these determinations may be presented on notice.