DUFFY, Chancellor.
This is an action in which plaintiff seeks to compel compliance with an order of this Court entered on September 17, 1969 in another suit (Civil Action No. 2747).
A.
The order required defendant-husband to pay his wife, who is the plaintiff, $400 a month, and she alleges that he has refused to make such payments since May 1970. The spouses were married on October 2, 1943. The amended complaint alleges also that the husband is a resident of Florida and that he is the beneficiary of a testamentary trust administered by Bank of Delaware from which he receives annual payments of about $18,000. Plaintiff alleges that she is a dependent of defendant and seeks a judgment against him and an order upon the Bank to pay into court the amount of any such judgment and to make payments directly to her as compliance with the Court’s order in Civil Action No. 2747.
Plaintiff secured ex parte an order appointing a Sequestrator and directing him to
“seize and hold, pursuant to the succeeding terms of this Order, property of the Defendant described in the aforesaid Affidavit of . . . consisting of income from a certain trust under the Will of . . ., deceased and pursuant to an agreement dated June 16, 1967 (# 8805) wherein and whereby the Defendant, Bank of Delaware, a corporation of the State of Delaware, was made trustee, and in which the Defendant, is entitled to [1]%5ths of the income from said trust for and during . . . [his] life . . ..”
Thereafter the Bank was dismissed as a party, without objection by plaintiff, and later joined again as a defendant, over its objection. I regard these and other procedural matters as important to this decision only to the extent that they are specifically referred to herein.
The Bank has moved to dismiss the complaint, and defendant-husband has moved to vacate the order of sequestration on essentially the same grounds. Since the husband was not served, the Court has no personal jurisdiction over him, and the sole question raised by his motion is whether his appearance can be compelled by seizure of his property interest held in the trust. But both motions involve the same legal issues and it is not necessary to distinguish between them.
B.
I first consider defendant-husband’s status. He has appeared only to seek vacation of the order of sequestration. He has, of course, a right to do that; he has a right to appear and attack the juris *258 diction of the Court but that may not include an attack on the merits of plaintiff’s claim. Hughes v. Trans World Airlines, Inc., 40 Del.Ch. 552, 185 A.2d 886 (1962). He has attempted, however, to argue the merits of the complaint and the amended complaint at various times during the litigation. (See, for example, his arguments as to plaintiff’s status, his own marital status and on the application for attorney fees.) In my view the Court may and should consider only those issues argued by him which bear directly upon the validity of the order of sequestration. He cannot attack the allegations of the complaint. Hughes v. Trans World Airlines, Inc., supra.
C.
10 Del.C. § 366(a) provides:
“If it appears in any complaint filed in the Court of Chancery that the defendant . is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant . to appear by a day certain to be designated. Such order shall be served on such non-resident defendant . by mail or otherwise, if practicable, and shall be published in such manner as the Court directs, not less than once a week for three consecutive weeks. The Court may'compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. . . . ”
The motions are based upon a spendthrift provision in Item II of the will of the deceased; it reads:
“The interest of a beneficiary in the trust property or in the income therefrom shall not be subject to the rights of the creditors of such beneficiary and shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors, and the interest of such beneficiary in the trust property or in the income therefrom shall be un-assignable.”
Defendants argue that this provision is a valid application of 12 Del.C. § 3536, which provides:
“The creditors of a beneficiary of a trust shall have only such rights against such beneficiary’s interest in the trust property or the income therefrom as shall not be denied to them by the terms of the instrument creating or defining the trust or by the laws of this State. . . . Every interest in trust property or the income therefrom which shall not be subject to the rights of the creditors of the beneficiary, as aforesaid, shall be exempt from execution, attachment, distress for rent, and all other legal or equitable process instituted by or on behalf of such creditors. ...”
The question thus structured is whether a spendthrift provision in a trust bars sequestration of a beneficial (income) interest in that trust. I conclude that it does not, in this case, for several reasons.
First, the language used by decedent in his will makes it plain that he intended to insulate the trust property from claims by “creditors.” Thus he said that the interest of a beneficiary shall not be subject to the “rights of creditors,” and that the interest shall be exempt from process instituted “by or on behalf of such creditors.”
Second, a wife suing for support or on a court order directing that her husband pay support to her is not a “creditor” as that term is commonly defined.[1] Compare Levine v. Levine, 209 F.Supp. 564 (D.Del. 1962), and Miller v. Superior Court, 9 *259 Cal.2d 733, 72 P.2d 868 (1937). She sues, rather, to compel performance of a duty which the law imposes upon a husband. While it is not made plain by the amended complaint, the entire record shows that plaintiff’s action here is for support (as ordered by the Court in Civil Action No. 2747).
Third, even if the language in the will were considered to bar a claim by his wife, it is against public policy to give full effect to the provision. As stated in Comment b to § 157, Restatement of the Law, Trusts, 2d, “The beneficiary should not be permitted to have the enjoyment of his interest under the trust while neglecting to support his dependents.” In the body of § 157 the law is stated as follows:
“Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,
(a) by the wife or child of the beneficiary for support, or by the wife for alimony. * * * ”
The overwhelming weight of authority is to the same effect: II Scott on Trusts, § 157.1; Bogert, Trusts and Trustees, § 224 (2 ed.) ; Griswold, Spendthrift Trusts, § 333 (2 ed.); compare DuPont v. DuPont, 39 Del.Ch. 137, 160 A.2d 586 (1960); and Safe Deposit & Trust Co. v. Robertson, 192 Md. 653, 65 A.2d 292 (1949).
The question of whether such a trust interest may be reached in satisfaction of an enforceable claim for support is not before me on the motion to vacate. But I regard the principle inherent in § 157 as just and reasonable and I adopt it as a second reason for denying both motions.
D.
The Bank argues that dividends it receives and any other property which it holds as Trustee cannot be sequestered because of 10 Del.C. § 3502. That statute provides in pertinent part:
“All corporations doing business in this State, except banks, savings institutions and loan associations, are subject to the operations of the attachment laws of this State, as provided in case of individuals.”
The equitable procedure of sequestration under 10 Del.C. § 366 is analogous to foreign attachment at law. Sands v. Lefcourt Realty Corporation, 35 Del.Ch. 340, 117 A.2d 365 (1955). In Provident Trust Co. v. Banks, 24 Del.Ch. 254, 9 A.2d 260 (1939), this Court applied § 3502 in rejecting a claim for equitable execution against a judgment debtor. But I am not persuaded that Provident is precedent on the present issue, nor am I satisfied that its underlying rationale supports the Bank’s argument.
It should be emphasized that nowhere in § 3502 is there a reference to equity or to sequestration proceedings. The statute is directed to attachment, only; and that is an ancient proceeding which is available in the law court, only.[2] The statute was applied in Provident to a claim by a judgment creditor who filed a bill seeking satisfaction out of assets which he could not reach by execution at law. In discussing § 3502 this Court said:
“That statute defines the policy of this State toward such institutions [banks and trust companies], and the same rule, therefore, applies to a creditors’ bill filed in this court, in which a banking institution, acting as trustee, is a party defendant.”
But the entire discussion by the Court and the Delaware cases which it cited show plainly that the case was litigated and decided in the context of a commercial claim by a creditor seeking satisfaction of a judgment : levy, sale under legal process, execu *260 tion, debtor, creditor’s bill—these are the words used by thé Court.
A public policy as to commercial claimants is one thing, a duty to support one’s dependents is quite another. Under established Delaware law a husband has a legal obligation, enforceable in this Court, to support his wife. I find no language in § 3502, no rationale in Provident, and certainly no principle in equity which persuades me to broaden the statute to bar a claim by a dependent for support. On the contrary, simple justice and public policy require the Court to enforce a duty to support a dependent wife. In short, Bank of Delaware may not defend against plaintiff on the basis of 10 Del.C. § 3502.
E.
Both defendant-husband and the Bank argue that the spouses were divorced in Mexico. I have grave doubts about defendant-husband’s right to argue the wide-ranging contentions he has made through counsel,[3] but it is not necessary to discuss these in any detail. Simply put, I decline to rule on defendant-husband’s application to determine his marital status while the only jurisdiction as to him is based upon sequestration of his property under 10 Del. C. § 366; in short, there is no present in personam jurisdiction over the husband.
As to the Bank, it wants the Court to find as a matter of fact and law that the spouses were divorced in Mexico on October 23, 1969. It thus seeks a determination of marital status in a context in which (a) it is a Trustee (only), (b) the determination is to be made on a paper record without oral testimony, (c) under circumstances in which the spouse who sought the divorce has not been served personally in this proceeding and is opposing efforts to compel his appearance, (d) and in which the Bank based its own motion to dismiss the complaint on the ground that the Court does not have “jurisdiction over defendant . . ., an indispensable party within the meaning of Rule 19.”
I decline to rule on the legality of the divorce because that should be determined only after full hearing and not on affidavits. The validity of a Mexican divorce involves a question of substantial public importance as to which there are varying views. See, for example, 13 A.L.R. 3d 1419. The Court should not decide the question in the context in which the Bank raises it. In saying this I note, among other things, that on March 28, 1969 the Superior Court denied the husband a divorce on the same grounds (incompatibility) on which he relied in Mexico. In the Mexican proceeding the' Court said that the husband “gave as grounds for the divorce the incompatibility of temperaments that exists between both spouses and their separation since September of nineteen hundred and sixty-seven;” that includes most of the period as to which the Superior Court made a judgment in March 1969. And as to residence, the separation agreement dated September 9, 1969, on which an order was entered by this Court in Civil Action No. 2747 on September 17, 1969, describes defendant-husband as a Delaware resident. Shortly thereafter he was in Mexico and, at some uncertain time, he was living in Florida. I make no point of all of this except to say that, on this record, the Bank asks too much in trying» for a ruling on marital status.
Many other arguments advanced by the Bank are based on the contention that the plaintiff is an “ex-wife” and since I have declined to determine marital status, those are not ready for decision.
Finally, I turn to the question of counsel fees. Plaintiff’s attorneys have filed for an interim allowance which is opposed by the Bank.
*261 Generally speaking, this Court does not award counsel fees in an action for specific performance. The amended complaint appears to plead that kind of action, in part if not in whole. But equity looks to the substance of things, and under the very special circumstances shown, I state my intention to award fees to plaintiff’s attorneys once jurisdiction to reach the husband’s interest in the trust has been finally determined. I rely upon the realistic view of a somewhat comparable situation taken by Chief Justice Wolcott in Cohen v. Cohen, Del.Supr., 269 A.2d 205 (1970), in which successive actions, although different in form, were regarded as “one continuous piece of litigation” for fee purposes.
Here I note two points in particular. First, Civil Action No. 2747 was an action for maintenance and the agreement which is alleged here was a condition of this Court’s order terminating that case; it would exalt form over substance to regard this suit merely as an action for performance of an agreement independent of anything else. The Supreme Court refused to do so in Cohen, and I follow that lead here. Second, there was gross unfairness by the husband in waiting some four months after the Court’s opinion of November 17, 1970 was filed before raising the question of marital status (the Bank did not have knowledge of this until March 1971); and there was gross unfairness by both the Bank and the husband in raising substantial legal questions and providing authorities only after the opinion was filed in November 1970. (See the Court’s letter opinion dated February 2, 1971.) The delay as to both matters seriously prolonged prosecution of the action, created procedural difficulties and required extraordinary time and effort on the part of plaintiff’s attorneys.
The motion of each defendant will be denied and an order will be entered requiring payment from the trust income of attorney fees and expenses in an amount to be fixed by the Court.

. A creditor is one to whom a debt is owing by another person who is the “debtor; ” in ordinary acceptance it has reference to financial or business transactions. Black’s Law Dictionary (Rev. 4 ed.).

. See also the 1960 amendment to the attachment statute, 10 Del.C. § 3512, which gives the Superior Court authority to make all necessary rules respecting attachments.

. See, for example, his argument on July 1.