HALSEY B. S., Petitioner,

v.

CHARLOTTE S. S., Respondent.

Family Court of Delaware,
New Castle County.

Submitted Jan. 31, 1980.
Decided April 28, 1980.

Sheldon N. Sandler of Bader, Dorsey & Kreshtool, Wilmington, for petitioner.

Thomas J. Capano of Morris, James, Hitchens & Williams, Wilmington, for respondent.

ARSHT, Judge.

The Court granted Petitioner, Halsey B. S., a divorce on the ground of incompatibility on January 18, 1978, and retained jurisdiction over Respondent's, Charlotte S. S., petition for property division, alimony and attorney's fees.

Before proceeding to the division, the Court must determine whether dividends generated during the marriage by stocks owned by Petitioner, Halsey B. S., prior to his marriage to Respondent, constitute marital property. The Court's ruling on this issue will, in turn, control whether stocks purchased after the marriage with the dividend income constitute marital property.

13 *Del.C.* § 1513(c) establishes the presumption that "all property acquired by either party after the marriage is marital property" subject to the Court's power to equitably divide such property as it deems just, in accordance with the statutory criteria set forth in § 1513(a). Petitioner contends that dividends generated by stock owned prior to the marriage are "property resultin (sic) from an increase in the value of property acquired prior to the marriage," and, therefore, the "marital property" presumption is rebutted in accordance with 13 *Del.C.* § 1513(b)(3).

█ The characterization of dividends as either "income" or "an increase in value" appears to be one of first impression in Delaware. However, the burden of proof rests upon Petitioner to prove that said dividends are not marital property because they constitute an increase in value of premarital property. See, e. g., *J.D.P. v. F.J.H.*, Del.Supr., 399 A.2d 207 (1979); *Husband R.T.G. v. Wife G.K.G.*, Del.Supr., 410 A.2d 155 (1979).

█ To meet his burden, Petitioner relies inferentially on *J.D.P., supra*, wherein the Supreme Court held that "an increase, during the marriage, in retained earnings of a corporation controlled by a spouse *may* be included in the calculation of a couple's marital property." 399 A.2d at 211 (footnotes omitted). While the Supreme Court rejected a "rigid and dogmatic" construction of the divorce statute in order to allow the Family Court to do justice between the parties in accordance with the factual setting of each case, Petitioner asserts that control over the disposition of corporate earnings was the determining factor in the Court's characterization of the retained earnings as marital property:

"The power to control the disposition of corporate earnings, that is, to distribute or retain them, is the critical factor in this case and distinguishes it from one in which the value of property owned prior to marriage is enhanced by circumstances not subject to control by the spouse." 399 A.2d at 210–211.

Accordingly, Petitioner argues that, as all the companies in which he held stock before the marriage were large public companies in which he had no control over the disposition of corporate earnings, the case at bar must be distinguished from the holding in *J.D.P.* by the Supreme Court's own language in that same case.

Nevertheless, despite Petitioner's proposed inferential application, this Court does not find that "control" holding of *J.D.P.* to be dispositive of the issue at bar. What Petitioner has failed to consider is the inherently different nature of the "property," the disposition of which is now before this Court.

Stock has at least two economic characteristics. First, the companies in which Petitioner is a shareholder may choose to pay dividends on a yearly or other basis to the holder. Secondly, at any given time, the value of each share may be greater than the original purchase price. While, admittedly, Petitioner, unlike the husband in *J.D.P.*, has no ability to influence either of these business decisions, the fact of lack of control alone cannot be said to ultimately determine the character of this property.

The second characteristic of stock is clearly within the statutory meaning of "increase in value" of premarital property. As

such, Respondent claimed no interest in either the original premarital shares or that portion of their current value that is greater than the value at the time of the marriage.

However, Petitioner has not persuaded this Court that monies paid to the Petitioner as dividends during the course of the marriage are, likewise, simply "an increase in value" of these same said shares. Rather, such dividends are better characterized as a return on investment, or profits. In *Nelson v. Nelson*, 114 Ariz. 369, 560 P.2d 1276 (1977), cited by Petitioner in support of his "increase in value" argument, the Court of Appeals of Arizona makes this same distinction between dividends as profits or a return on investment and the increase in the value of the shares themselves.[1]

Indeed, the Court finds inferential support for its characterization of dividends from the language of *J.D.P.* After defining "retained earnings" as "corporate net income which would be available for distribution as dividends, for payment of wages, salaries and bonuses, and other proper corporate earnings," the Supreme Court went on to note: "In one sense, earnings generated and retained after the marriage are not an increase in the value of property acquired prior to the marriage—by definition, *post marriage earnings add to rather than 'increase the value of' earnings accumulated prior to marriage.*" 399 A.2d at 210, footnote 1. (Emphasis added.)

■ Thus, the Court finds itself in agreement with Respondent that, as retained corporate earnings may not, under proper circumstances, be excluded from marital property by virtue of the "increase in value of" exclusion, certainly such earnings, once distributed cannot be held to fall within this same exclusion. To hold that all monies received after the marriage from passive premarital investment can never be marital property would limit the discretion and equitable powers of this Court contrary to the clear intent of Delaware law. See, e. g., *J.D.P. v. F.J.H., supra.*

Accordingly, for the reasons stated herein and in view of the general equities of the case at bar and in order to do justice between the parties, the Court holds that Petitioner has not successfully rebutted the presumption that the dividends received during the marriage are marital property.

■ Finally, although additional stocks were purchased, the dividend payments were first deposited in a joint account, at least until the parties recognized that the marriage was beyond repair. Such financial handling of the dividend checks not only supports the equity of Respondent's position, but implies that even had the Court concluded that the dividends were indeed an increase in value of premarital property under 13 *Del.C.* § 1513(b)(3), Petitioner's actions would have presumptively constituted a gift of these monies to the marriage. As such, they would, absent a showing of an agreement between the parties, still be subject to division by the Court.

■ Petitioner further suggests that the disputed stock dividends are exempted from treatment as marital property pursuant to 13 *Del.C.* § 1513(b)(2) by virtue of an agreement between the parties.

He bases this argument on his characterization of the parties' joint checking account as only a temporary repository of funds and the fact that Respondent claims, albeit erroneously under Delaware law, that stock purchased in her name from an inher-

---

1. Although the Arizona Court held that the dividends derived from separate property were, likewise, separate property, it did so under the Arizona statute that profits acquired during marriage from separate property remain separate property.

"All property, real and personal, of each spouse, owned by such spouse before marriage, *and that acquired afterward by* gift, devise or descent, and also *the increase,* rents, issues *and profits thereof,* is separate property of such spouse." A.R.S. §§ 25–213. (Emphasis added.)

The *Nelson* Court also held that none of the current value of stock owned by a spouse prior to the marriage could be community property, as, "*. . . an increase in value of separate property is subject to the same test as profits from separate property.*" 560 P.2d at 1279. (Citations omitted, emphasis added.)

itance she received during her marriage to Petitioner is nonmarital property.

The Court concludes that Petitioner has failed to show an agreement to exclude the dividends from the marital estate. Whatever Petitioner's belief as to the legal characterization of the dividends in question, as well as Respondent's belief as to the legal characterization of her inheritance, it has not been shown that the parties " . . . unite(d) in expressing a mutual and common purpose, with the view of altering their rights and obligations . . . ." *Black's Law Dictionary* Revised 4th Edition (1968) at p. 89.

█ The fact that an individual spouse may have control over marital property, and thus determine its placement into either a joint or separate account, or into other property, is not dispositive of the legal issue of its characterization under Delaware law for purposes of a property division settlement.

Having thus concluded that the dividends in question are marital property, the following shares, purchased with said dividends, are, likewise, held to be marital property:

200 shares Carpenter Technology;
600 shares Iowa Beef Processors;
200 shares J. Ray McDermott; and
63 shares DuPont.

█ The Court must now turn to the question of the division of property. The Court has examined the factors relevant under 13 *Del.C.* § 1513(a). In light of the length of the marriage between the parties, Respondent's health problems, which will likely require her to expend considerably more of her income on medical and nursing care; and the fact that Petitioner has both greater nonmarital assets and skill in financial matters, the Court feels it is equitable to award Petitioner 40% and Respondent 60% of the parties' marital property.

The parties have apparently agreed, except as to the shares in question, that each party shall retain that portion of the marital property currently in his/her possession, including but not limited to any inheritance to which each spouse became entitled during the marriage, the V. W. Rabbit, bank accounts, personal property, etc. Additionally, 25% of Petitioner's DuPont pension income is marital property subject to division.[2]

Accordingly, the Court requests the parties to identify the nature, title and value of property each currently retains and to recommend how the 1063 shares which are the subject of this decision should be distributed in order to achieve the 60:40 split determined to be equitable under the factors of 13 *Del.C.* § 1513(a).

The parties, jointly, or separately if they cannot agree, shall submit within thirty days a proposed distribution in conformity with the above, taking into consideration not only the current value of said shares, but also their dividend and growth potential as well as any tax consequences that may result from this distribution.

The Court reserves decision on the question of alimony and attorney's fees until after the completion of the property division.

---

**2.** The percentage of Petitioner's pension that is marital is determined by dividing the number of years of his marriage to Respondent during which he was employed with DuPont and earning benefits (8), by the total number of years of his employment (32).