457 A.2d 715 (1983)
FRANK G.W., Petitioner Below, Appellant,
v.
CAROL M.W., Respondent Below, Appellee.
CAROL M.W., Respondent Below, Appellant,
v.
FRANK G.W., Petitioner Below, Appellee.
Supreme Court of Delaware.
Submitted: May 10, 1982.
Decided: February 10, 1983.
Mark H. Froehlich (argued) and Louis B. Ferrara, Wilmington, for Frank G.W.
John G. Mulford (argued), Vincent A. Theisen and Davis S. Lank, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for Carol M.W.
Before HERRMANN, C.J., QUILLEN and HORSEY, JJ.
*717 QUILLEN, Justice:
Two appeals have been brought from a property division determination of the Family Court incident to a divorce. The initial appeal was brought by the husband who contends that the Family Court abused its discretion in refusing to reopen the issue of the valuation of certain gas and oil leases after there was an indication that the stipulated values were inaccurate. Specifically, the husband appeals from the refusal of the Family Court to grant a new trial or reargument after its decision on the property division was rendered.
In addition, the wife has appealed following a partial new trial occasioned by her application after the Family Court's decision. She contends that a second Family Court judge assigned to the case erred in overruling a prior opinion of the Family Court in this very case by the first judge assigned, who later excused himself from the assignment due to his retirement. The earlier summary judgment opinion had classified certain trust assets and gifts of stock as marital property subject to equitable distribution. The second opinion rendered during the trial process reversed that conclusion and consequently drastically reduced the amount of marital property subject to division.
The wife also contends, on the assumption that it was appropriate for the second judge to act at all, that error was still committed because: (1) the conclusion of the second judge was wrong; (2) the "non-marital" assets lost their character by commingling; and (3) the burden of proof should have been on the husband to establish the non-marital character of the assets.
Each side resists the contentions of the other. While it is not necessary for this Court to review all of the intricate detail of the financial situation of the parties in order to decide this appeal, some review of the facts is necessary to understand this protracted, and somewhat depressing, divorce litigation.
Husband and wife were married on July 29, 1967 and divorced on June 29, 1979. Husband's grandmother died on September 24, 1953. She created a testamentary trust which provided that upon the death of husband's mother, the trustee was to assign and pay over the corpus and accrued unpaid income of the trust to the mother's lineal descendants. When the husband's mother died on February 15, 1973, while the parties hereto were married, husband's share of the trust property was distributed to him.
A second trust, an irrevocable inter vivos trust, was established in 1956 by husband's mother for his benefit. The trustee, "in his absolute and sole discretion", was authorized to apply the net income of the trust to husband's benefit. Further, upon reaching the age of 25, husband was to receive the unexpended income and principal of the trust. Husband turned 25 on June 14, 1970, after he had been married for three years, and, pursuant to the trust provisions, received the corpus and accrued income from the 1956 trust at that time.
A third trust, a testamentary trust, created by the husband's mother in 1957, vested in the husband at her death in 1973. This trust was subject to postponement of enjoyment. Partial distribution of this trust took place in 1975 and the final distribution of $106,630 took place in 1980, following the 1979 divorce.
During ancillary proceedings, subsequent to Family Court's grant of husband's petition for divorce, a question arose as to whether the funds received from the trusts *718 constituted marital property or non-marital property. It appears from the start of the ancillary proceedings, wife conceded that the "rights" to the trusts were "vested" in the husband when the trusts were created prior to the parties' marriage. But the wife argued that the "classical" future interest concept of "vesting" was not determinative of the issue of whether the property received by husband during marriage constituted non-marital or marital property. Instead, she argued, equitable principles required the Court to look to when the husband actually received the possessory interest in the property. When the trusts were dissolved, the parties were married; therefore, the wife argued, the property was subject to equitable distribution during ancillary proceedings. The husband took the position that, since the property was vested properly in him prior to marriage, there could be no argument that the property constituted marital property.[1]
It was on this issue that the Family Court, through two judges, rendered the conflicting opinions. The first opinion prior to trial concluded "that all property acquired by [the husband] by virtue of the [first] two trusts and [several gifts of stock both prior and subsequent to his marriage] is marital." The opinion made no reference to the third trust. In that opinion, the Court recognized the husband had "acquired some sort of an interest" when the two trusts were established but went on to say he "acquired an additional, even more substantial interest" when he actually received the property when the two trusts terminated. As to the stock, the Court seemed to hold that the use of any property, commingled with other property of the family unit, for family purposes made the property marital by the manifested intent of the parties. An order was entered as part of the pretrial letter opinion.
The second opinion was not definitely given until after the completion of the initial ancillary hearing. The Family Court then determined that since the husband's interests in the two dissolved trusts had vested prior to the marriage, the property was acquired before the marriage and was non-marital. The Court also found that there had not been such commingling of non-marital assets with marital assets as to establish an intention to make all assets marital. This opinion found that the assets of the third trust, which had vested during the marriage, were marital property even though some distribution did not occur until after the divorce.
Initially, we want to emphasize that we take a dim view of a successor judge in a single case overruling a decision of his predecessor. We so state notwithstanding the fact that the second opinion rendered in this case was carefully considered and recognized the sensitive nature of the reversal on the law. We imply no criticism of the conscientiousness and diligence of the second Family Court judge. But we have a different view on such successive overruling in the trial courts. And our strong view is held for several reasons.
First, an extended view of the doctrine of the law of the case normally requires that matters previously ruled upon by the same court be put to rest. State v. Winsett, Del.Super., 200 A.2d 692, 693 n. 1 (1964); Levien v. Sinclair Oil Corporation, Del.Ch., 314 A.2d 216, 222 (1973), aff'd Del. Supr., 332 A.2d 139 (1975); Gibson v. Trustees of Pencader Presbyterian Church, Del. Ch., 20 A.2d 134, 138 (1941), aff'd Del.Supr., 22 A.2d 782 (1941); compare Haveg Corporation v. Guyer, Del.Supr., 211 A.2d 910, 912 (1965) and 5 Am.Jur.2d Appeal and Error *719 § 744 (1962). We do recognize, notwithstanding the appeal of finality, that interlocutory rulings may be set aside or modified. Anno., 169 A.L.R. 121 (1947). "Until the rendition of the final judgment, the interlocutory judgment remains within the control of the court." 46 Am.Jur.2d Judgments § 700 at 851 (1969); Yerkes v. Dangle, Del.Super., 33 A.2d 406, 408 (1943). When a successor judge enters onto the scene, however, additional considerations for adherence to prior rulings come into play. As the general comments of one annotation has put it:
"It is to be observed that the usual inclination of a judge to adhere to the previous interlocutory rulings of other judges who have acted in the same case does not arise simply from a recognition of the doctrine of the law of the case (which doctrine, as applied to the proceedings of a trial court, is intended to prevent the harassing of the court with matters which have been once heard and decided), but is founded upon additional considerations of courtesy and comity. The doctrine of the law of the case ... applies as well to the judge who acted in the first instance as to others; but the proposition that one judge ordinarily should not, or, as some courts have it, that he may not, vacate or contravene the interlocutory order or ruling of another is on its face something different, for it implies that the second judge to take action ordinarily should not, or perhaps may not, do that which the first might with perfect propriety do, or even that which the law would obligate him to do."
Anno., 132 A.L.R. 14, 15 (1941). Considerations of courtesy and comity are particularly relevant in Delaware where it is not unusual for our Superior Court to have various judges involved at different stages of protracted cases. Lengthy Family Court cases and Court of Chancery cases not infrequently have similar dual or multi-judge participation. While "it cannot be said that an imperative rule of restraint, as distinguished from a mere general rule of practice, has been established" [132 A.L.R. at 15], the general rule should be considered as firmly established here and exceptions should be entertained only in extraordinary circumstances. See Wilmington Medical Center, Inc. v. Coleman, Del.Supr., 298 A.2d 320, 322 (1972). Parties must not be entrapped by varying philosophies of different judges of the same Court in the case.
This case was clearly not such an extraordinary case to justify a departure from the general practice. To the contrary, the issue here was well within the range of reasonable debate. While different conclusions can be drawn from the closest factual case, Mey v. Mey, N.J.Super., 149 N.J.Super. 188, 373 A.2d 664 (1977), aff'd, N.J.Supr., 79 N.J. 121, 398 A.2d 88 (1979), the conclusions of the first judge were certainly not "obviously incorrect".
The language, "obviously incorrect", was in fact used by the second Family Court judge. But it is not absolutely clear whether the Family Court judge felt an "obviously incorrect" or simply "incorrect" prior ruling justified his action. The former, akin to a "clearly erroneous" standard in appeals from factual determinations, is, in our judgment, appropriate. Compare Levitt v. Bouvier, Del.Supr., 287 A.2d 671, 673 (1972); see also Anno., 132 A.L.R. at 38. By that standard, the second Family Court judge in this case abused his discretion in overruling the first in the manner he did.
We also find that the timing of the decision, as part of the trial disposition, was prejudicial error. Since one of the wife's arguments was that such assets, if non-marital, had lost their character by commingling, the belated ruling, even when qualified by the posttrial proceedings, denied the wife a fair opportunity to seek other avenues of relief. Obviously, if the trusts were marital property, it was not necessary to proceed as diligently, deliberatively and expensively, to pursue other arguments to put property in the marital category.
While our conclusions justify reversal, proper adherence to the first Family Court *720 ruling would have been subject, of course, to attack on appeal. While the legal issue is, in our view, one of considerable difficulty, we do not see any reason why an appellate ruling on that issue should not be made now. We therefore will exercise our judgment on the issue that split the two Family Court judges.
These conflicting positions as to when the trust properties were "acquired" stem from the nature of the gift. The trusts were divided into multiple parts: present gifts of income and deferred gifts of enjoyment of the corpus. See II Scott on Trusts § 128.2 (3d ed.1967).
There is an interesting contrast in the approaches of the two judges below. In opting for the in-hand position, the first judge said:
"With respect to the two trust estates, there is an additional and compelling reason why they should be treated as marital. It is, of course, beyond dispute that Petitioner acquired some sort of an interest in the trust corpuses and any unexpended income at the moment the trusts were established, notwithstanding that his interest was defeasible by death or that the corpuses might disappear as a result of dissipation and fraud on the part of the trustees. It is equally beyond dispute that upon his mother's death with respect to the `1953 trust' and upon his reaching age twenty-five with respect to the `1956 trust', he acquired an additional, even more substantial interest in the two trust estates. To even try to assess the comparative values of the interests acquired by Petitioner when the trusts were established and the interests acquired by him when the trusts were terminated would tax the wisdom of a Solomon. Accordingly, the Court holds that where any indivisible interest in property is acquired by either party during the marriage, the entire property in which such interest is acquired shall be presumed to be marital property."
In opting for the vesting approach, the second judge said:
"Petitioner's beneficial interest in the 1953 trust was property not dimished by the postponement of his right to possess the corpus. That property was acquired before marriage. Only the enjoyment of the corpus came to fruition during the marriage. Accordingly, the property arising from the 1953 trust is not marital property eligible for equitable distribution."
The second judge also noted that "the growth in value would also be non-marital. 13 Del.C. § 1513(b)(3)." Thus, the former thought any apportionment a chore too burdensome to undertake and the latter thought the difference between non-possession and possession of the trust assets to be an "increase in value of property acquired prior to the marriage."
Title 13 Del.C. § 1513 states, in pertinent part:
"(a) In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors ....
. . . . .
(b) For purposes of this chapter only, `marital property' means all property acquired by either party subsequent to the marriage except:
(1) Property acquired in exchange for property acquired prior to the marriage;
(2) Property excluded by valid agreement of the parties; and
(3) The increase in value of property acquired prior to the marriage.
(c) All property acquired by either party subsequent to the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome *721 by a showing that the property was acquired by a method listed in paragraphs (1) through (3) of subsection (b) of this section."
This Court has defined the meaning of the words "all property" in § 1513(c) inclusively:
"Our conclusion [that a non-vested pension was marital property] is certainly supported by the broad language in § 1513(c) which states that `(a)ll property acquired by either party subsequent to the marriage is presumed to be marital property' (emphasis added) and by § 1513(b) which defines `marital property' as `all property' (emphasis added) acquired by either party during the marriage."
Robert C.S. v. Barbara J.S., Del.Supr., 434 A.2d 383, 387 (1981). We have not, however, heretofore decided whether the term "acquired" should be defined as just entitlement to an interest or whether it should be defined in a possessory sense. In Black's Law Dictionary 41 (rev. 4th ed. 1968), "acquire" is defined as:
"To gain by any means, usually by one's own exertions; to get as one's own; to obtain by search, endeavor, practice or purchase; receive or gain in whatever manner; come to have."
A similar definition is found in Webster's New International Dictionary 23 (G & C Merriam, 2d ed. 1951). While such dictionary definitions suggest in hand possession, they can be marshaled to support either of the positions taken in the Court below and are, thus, not determinative.
Regardless of the theory used to characterize property, our courts are limited, with few exceptions, to apportioning and dividing assets which are presently possessory. The general rule was enunciated by Judge Rodney in Sidwell v. Sidwell, Del.Super., 165 A. 334 (1933). That case concerned the predecessor statute to § 1513 which did not require a segregation of marital and non-marital assets but did require that a wife's property allocation was to be made from personal property held by her husband.[2] The Court addressed the question of what personal property was indicated and concluded that a division could only be made from property the husband presently possessed, not that received in the past or to be acquired in the future. Id. at 336.
In A.I.D. v. P.M.D., Del.Supr., 408 A.2d 940, 942-43 (1979), a property division appeal, we found an exception to Sidwell. We took note of a question concerning income from a trust which had been created prior to the marriage. The husband contended that the trust income was non-marital property. While we stated that the trust income was questionable as marital property, we did not need to resolve that question.[3] However, we did examine the question of whether divisible assets had to be presently available under the rule of Sidwell. We recognized that Sidwell was an interpretation of a prior statute and that in a case where one party had dissipated all the available marital assets, the express language of the new statute, § 1513(a)(6),[4] *722 controlled. Therefore, we concluded that where "one party has `squandered' or `wasted' all of the presently available marital property to the exclusion of the other party" an award may be made out of future income. Id. at 943.
The conclusion in Sidwell has been modified in one other area, pensions. Pensions are an asset in the nature of deferred compensation and are subject to equitable division because they are presently earned, although not presently possessed. Robert C.S. v. Barbara J.S., Del.Supr., 434 A.2d 383, 386 (1981). See also Anno., 94 A.L.R.3d 176, § 13 (1979). In addition, equitable considerations relating to the nature of these unique benefits require their inclusion. See Weir v. Weir, N.J.Super., 173 N.J.Super. 130, 413 A.2d 638, 642 (1980); Kikkert v. Kikkert, N.J.Super., 177 N.J.Super. 471, 427 A.2d 76, 79 (1981).
Since the modifications in A.I.D. v. P.M.D. and Robert C.S. v. Barbara J.S. of the requirement of present possession are specific and distinguishable, we think that the broad rationale of Sidwell continues to have validity in the context of the present statute. Thus, our statute extends only to assets which are presently before the Court.
The Delaware property division statute differs from the Uniform Divorce and Annulment Act § 307 (1970),[5] upon which it is patterned, in that it includes for distribution property received by gift, bequest, devise or descent if acquired during the marriage. It has been interpreted to mean that if either spouse receives such property after marriage, that property becomes presumptively marital property. Husband R.T.G. v. Wife G.K.G., Del.Supr., 410 A.2d 155, 159-160 (1979). The General Assembly may well want to reconsider whether inherited property or property received by inter vivos gift, which is usually family related, should be included as marital property. We note that a change was recently enacted in New Jersey when such property was removed from statutory inclusion. See Gibbons v. Gibbons, N.J.Supr., 86 N.J. 515, 432 A.2d 80, 82 (1981).
Our law also differs from the law in community property states not only because those states reserve property received by gift, descent, devise and bequest to separate property status, see 15A Am.Jur.2d Community Property § 26 (1976), but also because our statute creates a presumption that any property acquired after marriage is marital property. E.C.W. v. M.A.W., Del. Supr., 419 A.2d 934, 937 (1980).[6] Further, the burden of proof as to the non-marital character of property received after marriage is on the spouse who makes that contention. J.D.P. v. F.J.H., Del.Supr., 399 A.2d 207, 211 (1979).
The method of characterizing assets used by the second Family Court judge, the vesting or inception of title theory, is used in most community property states and at least one equitable distribution state.[7] *723 That theory has been defined in the following way:
"As a general rule, the character of the title depends upon the existence or non-existence of the marriage at the time or the incipiency of the right by virtue of which the title is finally extended and perfected; the title when so extended and perfected relates back to that time. Stated in another way, the status of title is determined by the status of the original right, subsequently matured into full title."
15A Am.Jur.2d Community Property § 23 at 647 (1976). Seven of the eight community property states rely on inception of title to characterize property for divorce purposes. Under this theory, the entire property is characterized as either separate or community, with a right of reimbursement arising in the marital community if marital funds are used to perfect or mature the title. It is noteworthy that gifts remains separate property no matter when received, unless the gift is made to the marital community. See W. de Funiak & M. Vaughn, Principles of Community Property, § 133 (2d ed. 1971).
As noted, at least one equitable distribution state has adopted the vesting rationale. See Null v. Null, Mo.App., 608 S.W.2d 568 (1980). However, California, a community property state, as well as Maryland and Maine, equitable distribution states, have expressly rejected the inception of title theory with its all-or-nothing result.[8]
The first Family Court judge implicitly rejected the inception of title theory and attempted to base his characterization on the time of present pecuniary possession of the assets. In doing this, however, he erroneously concluded that the future interests were "indivisible" and had no severable value. The second Family Court judge correctly recognized that the vested future interests had a separate present value and were significant property assets in themselves.[9]See generally, II Scott on Trusts § 132 (3d ed. 1967). However, the second judge was incorrect in equating vesting of title with the meaning of the term "acquire" as used in 13 Del.C. § 1513.
We think the difficulty in this case stems from the necessity of characterizing all the trust assets, future interests as well as present distributions, as either non-marital or marital. Theoretically, there are three concepts under which characterization can be accomplished. First, the trust property can be considered "acquired" as an entity when any form of title arises; second, it can be regarded as apportionable into non-marital and marital components according to the time of possession of each component; or third, it can be deemed acquired only when actual possession or constructive possession (present right to control) of the corpus has accrued.
*724 If we were to adopt the first position, that taken by the second Family Court judge, and equate inception of title with "acquired", we would be affirming the use of a legalism which has its derivation in feudal concepts of real property and which has its usual application in estate and tax law areas. Inflexible and unchanging practices, useful in those spheres, are antithetical to the equitable principles mandated by law in Family Court cases.
"Given the broad, remedial purpose of the Act, with its mandate to the Court to equitably divide all property which spouses acquired after marriage (with few exceptions), and to do that in a way which will mitigage potential harm to the spouses (caused by the divorce), we must reject the rigid and dogmatic construction of the statute for which the husband argues. To hold otherwise would seriously limit the Court in the exercise of its equitable powers and invite evasion of the property division law and consequent injury to a spouse and, at the same time, deny a remedy to that spouse."
J.D.P. v. F.J.H., Del.Supr., 399 A.2d 207, 210 (1979).
Further, we must also keep in mind that our General Assembly has purposefully adopted an equitable distribution statute rather than one which codifies the theories which control division in community property states. In addition, prior interpretations of our statutes support the view that our courts must recognize present pecuniary realities [Sidwell v. Sidwell, 165 A. at 336] in order to establish "justice and fairness" as criteria for property division. Husband C. v. Wife C., Del.Supr., 391 A.2d 745, 746 (1978). Thus, vesting, in and of itself, cannot determine proper characterization of property as marital or non-marital. In Robert C.S. v. Barbara J.S., Del. Supr., 434 A.2d 383, 387 (1981), in which the divisibility of an unmatured contingent pension was at issue, this Court cited to the case of Stern v. Stern, N.J.Supr., 66 N.J. 340, 331 A.2d 257 (1975), with approval. The Stern court had stated
"[T]he concept of vesting should probably find no significant place in the developing law of equitable distribution. The notion of a vested interest came into being in a feudal society and was intimately associated with the medieval concept of seisin. Holdsworth, An Historical Introduction to the Land Law (1927) 68; Jenks, A Short History of English Law (4th ed. 1928) 84-5. It has played an important part in the development of the law of future interests, and early assumed a crucial role in the portion of that law dealing with the rule against perpetuities. On the other hand and in a quite different context the phrase, `vested rights,' is occasionally used to denote something to which constitutional guarantees may apply. 1 Simes & Smith, The Law of Future Interests (2nd ed. 1956) sec. 136, 116-18; Rothman v. Rothman, 65 N.J. 219, 225, 320 A.2d 496 (1974). These now customary useages of the concept of vesting are clearly in no way relevant to the question of effecting an equitable distribution upon the occasion of a divorce. Our statute requires, in order that property be available for distribution incident to a divorce, that it shall have been acquired during marriage. There is no reference to vesting."
Id. at 262. Therefore, the concept of vesting is significant to this problem only to the extent that it affects the value of the future interest. See also Weir v. Weir, N.J. Super., 173 N.J.Super. 130, 413 A.2d 638, 639-640 (1980). Thus, we must reject inception of title as applied to property received in trust.
On alternative grounds, the husband argues that even if title to the corpus is not found to relate back to the vesting of the future interests, the corpus should be characterized as an increase in the value of those interests received prior to the marriage and therefore exempt from distribution under 13 Del.C. § 1513(b)(3). We do not agree. The assets received after the marriage were qualitatively as well as quantitatively different from those received *725 prior to the marriage. The gift of the corpus is not merely an enhancement of a prior gift of a future interest in that corpus. It has a value separate and apart and not derived from the value of the prior gift. The intervening death of the life tenant has changed the quality of the property. The change is not comparable, for example, to a price rise in General Motors stock. To quote the language of E.C.W. v. M.A.W., Del.Supr., 419 A.2d 934, 937 (1980), in which we held that stock dividends distributed on premarital shares were not exchange property, the appellant "has clearly received during marriage property of value that he did not have before marriage .... [He] has received additional [property] without giving up any of his previously acquired [property]." Thus, we find that the gift of the corpus received during the marriage is not exempt increased value property as defined in 13 Del.C. § 1513(b)(3).
We think the most conceptually correct view is the second method, apportionment. This method recognizes the separate and multiple nature of the assets here. Apportionment would require us to characterize the trust as having both non-marital and marital components based upon the time value could be established for each component. Such an approach would be in accord with the definition of property as being composed of a "bundle" of divisible rights, see 73 C.J.S. Property § 1 at 142-143 (1951), and would accurately reflect the value of the assets in relation to the time of the marriage.
Just such a view of the divisible nature of property was taken in Harper v. Harper, Md.Ct.App., 294 Md. 54, 448 A.2d 916 (1982), a case which concerned a question of division of real property after divorce. The Maryland Court of Appeals noted that legislative intent could be implemented by the adoption of a "source of funds" or apportionment theory.[10] Under that rationale, the "characterization of property as non-marital or marital depends upon the source of each contribution as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained." Harper v. Harper, 448 A.2d at 929. Therefore, one property could have both components.
In reaching this conclusion, the Maryland Court adopted a definition of "acquired" from Tibbetts v. Tibbetts, Me.Supr., 406 A.2d 70, 75-76 (1979).[11]
"In thus interpreting the process of separating marital and non-marital property which has been conjoined in the acquisition of a single property during marriage, we find guidance in the fundamental purposes underlying the approach to disposition of the spouses' property .... This research suggests that our choice is between a static or a dynamic interpretation of the term "acquisition." We adopt a dynamic interpretation in that the proper characterization of property as marital or non-marital may shift as individual items of property, marital or non-marital, are contributed by the spouses in exchange for the property acquired."
Similarly, this Court has also recognized that one property can reflect both marital and non-marital components. In J.D.P. v. F.J.H., Del.Supr., 399 A.2d 207, 211 (1979), we remanded to the Family Court on a *726 question of whether Family Court had overlooked the fact that a husband's separate one-half ownership of real property had removed that half from consideration for equitable distribution upon divorce. An apportionment analysis has also been used in this Court's decisions regarding pensions.[12]
However, this trust property is not directly analogous to the real property cases in Maine and Maryland. The transient existence of a future interest prevents the adoption of apportionment. The logical impediment to the successful use of this method occurs not at the characterization phase but at the segregation phase of property division. Unlike real property, a future interest has pecuniary value only in the period prior to possession of the corpus; once the latter interest becomes possessory the future interest has no value. When we try to ascribe a value to the non-marital future interest after the corpus has been distributed, we cannot do so. Therefore, while apportionment is theoretically correct, its application is too tortured and speculative to be a practical judicial remedy in this context.
Thus, in our opinion, the possessory definition of "acquired", and that initially accepted in Family Court, should be adopted here. "Acquired" in 13 Del.C. § 1513(b) is to be defined to reflect the reality presented to our Courts  assets are to be characterized in regard to the actual or constructive possession by the parties. This definition reflects the statutory purpose of allocating available resources fairly between the parties in consideration of both monetary and non-monetary contributions made to the well-being of the family. Such a definition also enables our Courts to value trust assets in a logical and workable manner based on values which were subject to the control and enjoyment of the marital unit.
We think that this resolution of the question on the basis of possessory realities gains at least some support from the reasoning of Mey v. Mey, N.J.Supr., 79 N.J. 121, 398 A.2d 88 (1979). In that marital property division case a testamentary trust had been established and had vested prior to the marriage. Enjoyment of the corpus had been deferred to a time subsequent to the beneficiary's marriage. As in our case the husband-beneficiary argued that he "acquired" the property when the trust vested prior to the marriage and, thus, it was non-marital property.
On appeal, the New Jersey high court affirmed the appellate court ruling that under the applicable New Jersey statute the property was acquired after the marriage. The New Jersey statute in question stated:
N.J.S.A. 2A:34-23
"[I]n all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage."[13]
The Court held that property is statutorily "acquired when the beneficiary acquires the title which carries with it the effective power to control or use or enjoy." Id. at 89. The Court premised this holding on an interpretation of the word "beneficially" as meaning "subject to present enjoyment." Ibid.
*727 Although 13 Del.C. § 1513 does not contain the precise language of Mey and in its absence, as the husband contends, a case can be made that either legal or beneficial ownership creates property acquired, we are persuaded that a similar common sense possessory meaning is the one our General Assembly intended for the word "acquired". Thus, a future interest cannot be "acquired" within the meaning of § 1513 as it has no possessory value, even though it may have present monetary worth, e.g. DuPont v. DuPont, Del.Ch., 160 A.2d 586 (1960). Further, once the corpus is received, even that monetary worth disappears. The receipt of such a limited and transient interest cannot have been intended to signify those absolute property rights which accrue when the corpus comes into possession.
Therefore, we find that the meaning of "acquired" in our statute signifies the actual receipt or the right to receive the corpus of a trust. Thus, the assets of the corpus of the 1953 testamentary trust, the assets of the corpus of the 1956 inter vivos trust and the first distribution of the 1957 testamentary trust are marital property. The final $106,630.00 distribution of the 1957 testamentary trust which occurred after divorce, is non-marital property. We remand to the Family Court for appropriate property division in light of this holding.[14]
Furthermore, although ordinarily we would find little merit in the husband's contention that there was an abuse of discretion in the Family Court's denial of his motion to reopen the issue of the stipulated value of the oil and gas interests, we will remand that issue for reconsideration as well. Normally, this Court will not interfere with a Family Court determination concerning the allocation and division of marital property, except where abuse of discretion is shown. Wife B v. Husband B, Del.Supr., 395 A.2d 358, 359 (1978). This general rule equally applies to Family Court's determination concerning relief from a stipulation of the parties. 73 Am. Jur.2d Stipulations § 13 (1974). In this case the valuation of those interests was a very complicated procedure and the stipulation was made for that very reason. But, given the remand required as a result of the wife's appeal and given the concept of an equitable division of the marital estate, it would artificially limit the Family Court on remand if it were bound by a particular value of oil and gas interests that may not be accurate and may not be appropriately applied in the changed context. Our remand of the question regarding the oil and gas interests gives Family Court an opportunity to reconsider, if it so chooses, that issue in light of the other changes made necessary by this opinion.
The judgment of the Family Court is reversed and the case is remanded for further proceedings consistent with this opinion.
NOTES
[1] The pertinent statutory definition at 13 Del.C. § 1513(b) reads as follows:

"(b) For purposes of this chapter only, `marital property' means all property acquired by either party subsequent to the marriage except:
(1) Property acquired in exchange for property acquired prior to the marriage;
(2) Property excluded by valid agreement of the parties; and
(3) The increase in value of property acquired prior to the marriage."
[2] Del.C. § 1531 (Rev.Code of 1915, c. 87, §§ 3018, 3019) (current version at 13 Del.C. § 1513).
"(a) When a divorce shall be decreed from the aggression of the husband, the complainant shall be restored to all her real estate, and allowed, out of her husband's real and personal estate, such share as the court thinks reasonable; but if the divorce be for the wife's aggression, the court may restore the whole or a part of her real estate, and also such share of her husband's personal property as seems reasonable.
(b) Any allowance or division of property under subsection (a) of this section, may be by a gross sum, or an annual allowance, or an assignment by metes and bounds. The court may appoint commissioners to execute any order in the premises, and may issue writs of possession, as in case of land sold on execution process." This statute was repealed in 1974.
[3] But cf. Halsey B.S. v. Charlotte S.S., Del.Fam. Ct., 419 A.2d 962, 964 (1980).
[4] Del.C. § 1513. Disposition of marital property; imposition of lien, insurance policies.
"(a) In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors including:
. . . . .
(6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker or husband;"
[5] That provision was withdrawn in 1973 and replaced with two alternative provisions, one for general use and the other for use in community property states. See 9A Uniform Laws Annotated § 307 (1979).
[6] Community property states regard property received during marriage by "lucrative" title, e.g. inheritance, to be separate property as opposed to that received by "onerous" title, e.g., by labor, which is community property. See W. de Funiak & M. Vaughn, Principles of Community Property, § 62 (2d ed. 1971).
[7] The eight community property states are: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington. California relies on the "source of funds" theory. Nevada has varied from a strict inception of title rationale on occasion. Barrett v. Franke, Nev.Supr., 46 Nev. 170, 208 P. 435, 437 (1922). Missouri, an equitable distribution state, also uses inception of title. See Null v. Null, Mo.App., 608 S.W.2d 568, 570 (1980).
[8] Cal: In re Marriage of Jafeman, Cal.Supr., 29 Cal.App.3d 244, 105 Cal.Rptr. 483, 491 (1972). Md: Harper v. Harper, Md.Ct.App., 294 Md. 54, 448 A.2d 916 (1982). Me: Tibbetts v. Tibbetts, Me.Supr., 406 A.2d 70 (1979). The Illinois Courts have rejected the inception of title theory but have adopted the all-or-nothing transmutation of property theory. In that jurisdiction when marital and non-marital property are commingled the entire resultant property is presumed to be marital. The value or amount of the non-marital contribution becomes only a factor in determining equitable distribution. Illinois established this presumption on the basis of a statutory preference for marital property. See In re Marriage of Smith, Ill.Supr., 86 Ill.2d 518, 56 Ill.Dec. 693, 427 N.E.2d 1239, 1245-46 (1981); In re Marriage of Lee, Ill.Supr., 87 Ill.2d 64, 58 Ill.Dec. 779, 430 N.E.2d 1030, 1031 (1981).
[9] In DuPont v. DuPont, Del.Ch., 160 A.2d 586 (1960), a support action under a predecessor statute, the Chancellor discussed the loan value of a future interest, a contingent remainder in a trust. In In Re Marriage of Walker, Ore.App., 27 Or.App. 693, 557 P.2d 36, 37 (1976), trust future interests were found to be valuable and alienable and were divided. However, in the following cases future interests were found too remote or contingent to be subject to equitable distribution. In Re Marriage of Rosenblum, Colo.App., 43 Colo.App. 144, 602 P.2d 892, 894 (1979) (spendthrift trust); Kroha v. Kroha, Ark.Supr., 265 Ark. 170, 578 S.W.2d 10 (1979) (interest in trust income); Loeb v. Loeb, Ind. Supr., 261 Ind. 193, 301 N.E.2d 349, 353 (1973) (future interests in trust).
[10] No preference for classification of property as marital was found in the Maryland statute. Thus, under the Maryland rule a property may be non-marital in "the ratio that the non-marital investment ... bears to the total non-marital and marital investment ... [and may be marital] in the ratio that marital investment ... bears to the total nonmarital and marital investment...." Harper v. Harper, Md.Ct. App., 294 Md. 54, 448 A.2d 916, 930 (1982). Compare J.D.P. v. F.J.H., Del.Supr., 399 A.2d 207, 211 (1979).
[11] The Maine statute is similar to ours in that there is a presumption of marital property. However, property acquired by gift, bequest, devise or descent is excluded. 19 M.R.S.A. § 722-A. The Tibbetts Court noted that the inception of title rule is the "initial premise on which characterization is based .... [It] is still the basic premise and ... the source of funds rule forms an equitable exception." Tibbetts v. Tibbetts, Me.Supr., 406 A.2d 70, 76-77 n. 9 (1979).
[12] We have recognized that in pensions there is both marital and non-marital property existing within the same entity. In Robert C.S. v. Barbara J.S., Del.Supr., 434 A.2d 383 (1981), while acknowledging the necessity for expert testimony as to value and noting that unmatured benefits "are seldom susceptible to precise valuation....", id. at 387, this Court determined that the value of a nonvested, unmatured pension is subject to equitable distribution. The pension amounts attributable to the periods prior to or subsequent to the marriage are separate property while those rights earned during a marriage are proportionately distributable to the parties. Id. at 388.
[13] Subsequent legislation has removed the categories of gifts, devises and bequests from statutory coverage. Gibbons v. Gibbons, N.J. Supr., 86 N.J. 515, 432 A.2d 80 (1981).
[14] With regard to the wife's contention that the non-marital assets lost their character by commingling, we are not prepared to say that it is without merit in light of the procedure used by the second Family Court judge. Thus, if necessary, the wife upon remand should be permitted to develop that contention.