**Marlene P. GRAY, Respondent-Appellant,**

v.

**Thomas V. GRAY, Petitioner-Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 17, 1985.

Decided: Jan. 22, 1986.

Eliot Alazraki, Wilmington, for respondent-appellant.

John C.S. Frank, Wilmington, for petitioner-appellee.

Before CHRISTIE, C.J., HORSEY and MOORE, J.

HORSEY, Justice:

A divorced spouse ("wife") found to be dependent and awarded temporary alimony appeals Family Court's failure to order her former spouse ("husband") to pay "permanent" or indefinite alimony. Wife also appeals the Court's refusal to assess her reasonable attorney's fees and expenses against husband under 13 *Del.C.* § 1515.

The parties were divorced after a marriage of 24 years, the last three of which the parties were separated. The two children of the marriage, one a minor and the other an adult, reside with their mother. The father is providing child support of $400 per month until the child reaches the age of eighteen, six years hence. The adult daughter is paying $100 a month toward household expenses and is self-sufficient.

Each of the parties has a high school education and they are both in their late forties. Before marriage wife taught school but she did not have a college degree, and she gave up full-time teaching after marriage. Husband has been employed by a national chemical company for over twenty-four years and holds a responsible position of maintenance supervisor. His income has significantly increased each of the past three reported years and, as of 1983, exceeded $40,000. His employee benefits include hospitalization, life insurance and retirement benefits. Husband has remarried a fellow employee who earns about $21,000. His wife receives support for her two children of a prior marriage.

Following separation wife sought work, but has only been able to obtain retail clerical positions. At time of hearing, she had been employed for three months with a retail department store. Her gross income is about $9,500 per year. She can expect no bonuses or substantial pay increases. An employment expert testified: that given her situation she was fortunate to have a job; that no better paying job was currently available; that she could expect future pay increases limited to cost of living; and that teaching held no prospects for employment. On the other hand, husband, the witness opined, was employed by a "quality company" with good prospects for continued increases in both income and retirement benefits. Wife's expert testimony was not contradicted; indeed, husband con-

ceded that wife was partially dependent upon him for support.

The parties agreed upon a division of all marital property except husband's pension benefits. While the 63%/37% division favored wife, wife's share included property worth about $28,000 which she had inherited. If her inheritance is disregarded, the division was nearly 50–50. Apart from $10,000 of the inheritance, her assigned share of the marital property includes no income-producing property. The principal marital asset received by wife was the marital home, subject to her assumption of the outstanding mortgage. Husband received intact his employee benefits, including stock, savings and retirement, valued at about $31,000, three motor vehicles and half the home furnishings.

■ Our divorce statute authorizes two types of alimony for a dependent party who is divorced after a marriage of over twenty years: temporary alimony and indefinite alimony, sometimes referred to as "permanent." (Permanent alimony is a misnomer since any award of alimony under the statute is subject to modification or termination in the future, but "only upon a showing of real and substantial change of circumstances.") 13 *Del.C.* § 1519(a)(4).[1] Temporary alimony is to be awarded where a party presently dependent may be rea-sonably expected to achieve financial independence through appropriate use of the temporary alimony awarded or for other reasons, such as an expected inheritance or change in marital status.

Wife sought indefinite alimony, as opposed to temporary alimony, of $1,000 per month based on the undisputed evidence of: the parties' marriage of over twenty years; her middle age; her lack of a professional degree for re-employment as a teacher; her lack of prospects for employment as a teacher even if she were to return to school to seek a degree; her present limited income and lack of prospects for increasing her income in the future; her lack of any significant income-producing property; and her conceded present dependency upon her former husband, who earns four times wife's present salary.

Notwithstanding wife's apparent qualification for alimony indefinite in time under 13 *Del.C.* § 1512(a)(3),[2] Family Court awarded wife alimony for only six years and in bi-yearly decreasing amounts; that is, $700 a month for the first two years; $500 a month for the next two years; and $300 a month for the last two years.[3] The Court rejected wife's contention that she should receive an award of alimony, indefinite in duration, of $1,000 per month, subject to upward adjustment as husband's

1. The concept of temporary alimony, as distinguished from alimony *pendente lite*, became a part of the Delaware statute law in 1978 with the enactment of 61 *Del.Laws*, c. 204. For the history of this legislation, *see J.P.D. v. J.M.D.*, Del.Supr., 413 A.2d 1233 (1980). Under the 1978 legislation, the purpose of temporary alimony was "to assist a party to achieve independent financial status" (subsection (h) of section 1518 of the 1974 Revised Code). *J.P.D. v. J.M.D., supra* at 1235. In 1979, the Delaware General Assembly struck subdivision (h) of section 1518 after restating section 1512 to incorporate the concept of temporary alimony following divorce under present subsection (a)(3), including the special provision of indefinite alimony for a marriage of over twenty years. 62 *Del.Laws*, c. 168.

2. 13 *Del.C.* § 1512(a)(3) provides:

The Court may grant alimony for a dependent party as follows:

.  .  .  .  .

(3) Alimony for a petitioner, or for a respondent who does not qualify for alimony under paragraph (2) of this subsection, commencing after the entry of a decree of divorce or annulment but not to continue for more than 2 years after marriage dissolution unless the parties were married for more than 20 years.

3. The Court does qualify the term of its award by stating that the award "shall not continue beyond 6 years (and could end earlier) absent a showing of real and substantial change of circumstances under 13 *Del.C.* § 1519(a)(4)." We interpret this somewhat ambiguous statement as permitting an earlier termination of the award but not an extension of the award without a further hearing and showing of a *further* change of circumstances. In our view, this qualification injects an illusory element of flexibility in the Court's award as to any extension of the award.

income increased and for cost of living. As noted, the Court also rejected wife's application that her attorney's fees and expenses be assessed against husband.

Two questions are raised by wife's appeal of the alimony award: (1) the adequacy of the Court's initial award of $700; and (2) the appropriateness of an award of temporary alimony in reducing amounts terminating in six years as opposed to the indefinite award sought by wife.

The usual standard of review of an alimony award is whether the trial court abused the discretion conferred upon it under 13 *Del.C.* § 1512. *R.E.T. v. A.L.T.*, Del.Supr., 410 A.2d 166, 168 (1979). However, our scope of review is considerably broader, for it "extends to a review of the facts and law as well as to a review of the inferences and deductions made by the Trial Judge." *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, Del.Supr., 402 A.2d 1202, 1204 (1979).

Thus, in reviewing the amount and duration of an alimony award (subject to the time limits of § 1512(a)(3)), a trial court's rulings will not be disturbed on appeal if: (1) its findings of fact are supported by the record; (2) its decision reflects due consideration of the statutory factors found in section 1512; and (3) its explanations, deductions and inferences are the product of a logical and deductive reasoning process. *Wife (J.F.V.) v. Husband (O.W.V., Jr.), supra.* Regrettably, we find the Trial Court's opinion to fail this standard of review as to both the amount and duration of the alimony award.

We look first to the facts, that is, the evidence of record, to determine whether the Court's findings are consistent therewith. In our view, the Court's findings are consistent with its determination of wife's dependency under section 1512(b) but wholly insufficient to justify its implicit finding that wife's dependency would diminish (within two years) and end (within six years), according to the Court's timetable.

Under the statutory scheme of section 1512, an award of alimony is conditioned upon a finding of dependency under 13 *Del.C.* § 1512(b).[4] That finding was conceded by husband and the Court so found. In so finding, the Court apparently adopted the uncontroverted testimony of wife's employment expert, previously detailed. The Court's only qualification of its dependency finding is its repeated reference to wife's stipulated receipt of 63% of the net marital estate—without recognizing that the 13% excess represents her inheritance.

The question then became how to translate wife's dependency into a monetary award to wife and for how long. The Trial Court properly turned to section 1512(c).[5]

4. 13 *Del.C.* § 1512(b) provides:

A party is dependent if the party or someone on behalf of the party shall aver in an affidavit of dependency filed in the action and shall prove by a preponderance of the evidence that such party:

(1) Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;

(2) Lacks sufficient property including any award of marital property, to provide for the party's reasonable needs; and

(3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

5. 13 *Del.C.* § 1512(c) provides:

The alimony order shall be in such amounts and for such time, except as limited in time under subsection (a) of this section, as the Court shall deem just without regard to marital misconduct and after considering all relevant factors justified by the evidence, including:

(1) Financial resources of the party seeking alimony including marital property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with such party includes a sum for that party as custodian;

(2) Time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;

(3) Standard of living established during the marriage;

(4) Duration of the marriage;

(5) Age, and the physical and emotional condition of the party seeking alimony;

However, after reciting its consideration of the statutory factors enumerated in subparagraphs (1) through (7), the Court, without a reasoned explanation, quantified wife's dependency at $700 a month and then concluded "that a graduated schedule [of staged reductions of alimony payments to wife] along the lines suggested by husband would fit this situation." [6] The Court reasons as follows:

> I have given attention to the relative financial circumstances of the party, that here wife is seeking alimony despite the fact that she does have a present income, that husband had admitted that wife is partially dependent upon him for support, that wife is receiving 63% of the net marital estate, that wife will receive the former marital residence where she lives with both of the parties' children, that wife's employment does not involve the necessity of further education and that she is probably employed up to her limit at this time, that the disposition here made will permit her to enjoy a reasonable standard of living comparable to that enjoyed during the marriage, that the marriage has existed for 24 years so there is no two year time limit as specified by 13 *Del.C.* § 1512(3).
>
> \* \* \* \* \* \*
>
> After weighing the evidence ... it is my conclusion that a graduated schedule along the lines suggested by husband would fit this situation so that for two years husband shall pay $700 in alimony, for two years $500 and for two years $300. Alimony shall not continue beyond 6 years (and could end earlier) absent a showing of real and substantial change of circumstances under 13 *Del.C.* § 1519(a)(4).

(6) Ability of the other party to meet his or her needs while meeting those of the party seeking alimony; and
(7) Tax consequences.

**6.** Husband had proposed that the Court award his wife temporary alimony in bi-yearly declining amounts terminating in six years. His reasoning for urging this result, which the Court apparently adopted, was that "wife should be

As previously noted, the primary purpose of temporary alimony is "to assist a party to achieve independent financial status" (footnote 1). Here, the evidence is uncontradicted that wife cannot reasonably be expected to increase her earnings and hence reduce her dependency in the forseeable future. The Court so found in ruling that wife was "probably employed up to her limit." The Court then qualified this finding with the words, "at this time." However, there is no factual basis in the record for the Court to assume that wife's present inability to support herself is only temporary. An award of alimony may not be based on speculation or conjecture.

The Court's award of temporary alimony to wife cannot be sustained when it is not supported by findings (and evidence in support thereof) that wife may be reasonably expected to achieve financial independence within the Court's mandated time frame. Thus, the Court's award of temporary alimony, rather than indefinite alimony, must be aside.

The Court has also failed to explain how wife may reasonably be expected to reduce her dependency on husband according to the timetable fashioned by the Court. The record lacks any substantial evidence that wife may reasonably be expected to increase her disposable yearly income by $200 a month or $2,400 a year within two years and by another $2,400 within two more years. In the absence of evidence supporting wife's ability to increase her earning capacity, the Court's timetable for staged reductions must also be set aside for lack of evidentiary support.

We find the same evidentiary lack in the Court's fixing of wife's present dependency

encouraged to become self-supporting in the future." The Court also adopted husband's timetable, though not his suggested amounts. Husband proposed that his wife receive $400 a month alimony for the first two years; $300 per month for the next two years; and $200 for the remaining two years, with the payments scheduled to cease six years from the date of their divorce.

on husband at $700. This sum presumably represents the difference between wife's present reasonable needs and her present ability to support herself. However, the Court has provided us with no explanation or subsidiary findings justifying its selection of $700 as the proper amount of support to be paid by husband.[7] The Court's statement that its disposition of the case "will permit wife to enjoy a reasonable standard of living comparable to that enjoyed during the marriage" is, standing alone, simply inadequate to sustain the award.

Having found wife to be dependent upon husband within the meaning of subsection 1512(b), the Court was then required to do more than refer to the statutory factors of subsection 1512(c). The Court was required to translate that dependency into a dollar amount through consideration of the statutory factors found in subsection (c) of section 1512. (*See* footnote 5, above.) For example, the Court states that it has given "attention to the relative financial circumstances of the party [wife]." However, the Court has not in fact related wife's financial status to husband's, again in quantitative terms. We think this is a necessary step in quantifying wife's dependency; and the Court has not done this, except in conclusionary terms that preclude effective appellate review. Without such findings, we cannot determine the sufficiency of the Court's award of $700 to wife.

Perhaps the most critical statutory factor in determining degree of dependency is the standard of living of the parties established during their marriage. In our view, the Trial Court could not properly arrive at a monetary sum representing wife's dependency on husband without assessing that standard of living and comparing it with their respective present living standards. That has not been done here, except in conclusionary terms. This Court has previously noted that the term dependency, though not defined by statute,

> means more than a minimal existence or a subsistence level. Its meaning is to be "measured against the standard of living established by the parties during their marriage."

*Gregory J.M. v. Carolyn A.M.*, Del.Supr., 442 A.2d 1373, 1375 (1982). In *Adelaide A.G. v. Peter W.G.*, Del.Supr., 458 A.2d 702, 704–705 (1983), we stated:

> as dependency means more than mere subsistence, so does 'support.' Hence, 'support' under § 1512(b)(1) and under (b)(3) is used in its broad sense. *See, Black's Law Dictionary*, (5th Ed.):
>
> *Support*, n. That which furnishes a livelihood; a source or means of living; subsistence, sustenance, or living. In a broad sense the term includes all such means of living as would enable one to live in the degree of comfort suitable and becoming to his station of life. It is said to include anything requisite to housing, feeding, clothing, health, proper recreation, vacation, traveling expense, or other proper cognate purposes; also, proper care, nursing, and medical attendance in sickness, and suitable burial at death. See also *maintenance*.

We do not say that $700 is an inadequate award; we simply hold that the Trial Court has failed to make findings sufficient for the award to be sustained.

Lastly, we take up wife's contention that the Trial Court erred in failing to award her reasonable attorney's fees pursuant to 13 *Del.C.* § 1515, which provides:

> The Court from time after considering the financial resources of both parties may order a party to pay all or part of the cost to the other party of maintaining or defending any proceeding under this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after the entry

---

**7.** We note in passing that $700 seems to represent a "split the difference" compromise between the amount of support wife requested ($1,000) and the amount of support husband offered to pay ($400).

of judgment. The Court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The Court denied wife's application that husband should reimburse her $1,280.25 for attorney's fees and costs. Husband contended that each party should be required to pay his or her own attorney's fees; and the Court agreed. The Court based its denial on three considerations: wife's receipt of 63% of the net marital estate; and the Court's award to wife of alimony and child support.

 The Trial Court has broad discretion in determining whether to award attorney's fees under section 1515; but an award will be set aside if found to be arbitrary, that is, rendered without reasons or based on reasoning that is flawed or contrary to the statute's purpose. *Husband B.W.D. v. Wife B.A.D.*, Del.Supr., 405 A.2d 123 (1979). The underlying purpose of the statute, including its predecessor, is to equalize the positions of the parties by providing a financially disadvantaged spouse with financial means to prosecute or defend an action. *Husband F. v. Wife F.*, Del.Supr., 432 A.2d 331 (1981). However, a party need not be totally without assets or income in order to be awarded attorney's fees. *G.S.G. v. P.S.G.*, Del. Supr., 412 A.2d 319 (1980). The right to attorney's fees is also to be viewed at the outset of the divorce proceeding; though under section 1515, the Court has the authority to order an award "from time to time." *Husband S. v. Wife S.*, Del.Supr., 294 A.2d 89, 91 (1972).

Here, we find the Court's reasons for rejecting wife's claim to be both flawed and contrary to the underlying purpose of the statute. Instead of considering the relative financial conditions of the parties both at the outset of the litigation and at its conclusion, the Court has focused upon wife's recovery in the marital property division and the award of alimony and child support. In again crediting wife with receipt of 63% of the marital assets, the Court has either ignored her inheritance or assumed that she should use her inheritance to discharge her current obligations for attorney's fees. We also cannot agree that wife's ability to pay her attorney's fees should be measured by her award of either alimony or child support. Further, the Court has totally ignored the disparity in the parties' current incomes. We think it plain that the economic positions of the parties were not equalized by the marital property division in view of the parties' disparate incomes. *Cf. G.S.G. v. P.S.G.*, *supra* at 324. Therefore, we find the Court's denial of wife's attorney's fee claim to constitute an abuse of discretion; and we direct that on remand, judgment be entered for wife for her reasonable attorney's fees and costs incurred in this litigation, both at trial and on appeal.

\* \* \*

Reversed and Remanded for further proceedings consistent herewith.