**Katherine G. GREGG, Respondent
Below, Appellant,**

v.

**Norman E. GREGG, Petitioner
Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 15, 1986.

Decided: June 11, 1986.

Joseph W. Benson, Barbara A. Brodoway (argued), and Kevin P. O'Neill (argued), of Joseph W. Benson, P.A., Wilmington, for appellant.

Joseph A. Hurley, Wilmington, for appellee.

Before CHRISTIE, C.J., McNEILLY, HORSEY, MOORE, and WALSH, JJ., constituting the Court *en banc.*

CHRISTIE, Chief Justice:

In this case the parties have filed an appeal and a cross-appeal from a judgment of the Family Court ancillary to divorce proceedings. This Court is asked to review the Family Court's decisions as to what property is to be regarded as marital property, how that property is to be divided, the limited alimony award, and the counsel fee award.

The facts of the case are as follows. Katherine and Norman Gregg were married on May 25, 1957. They separated in late 1976 and were divorced on December 8, 1982. Mrs. Gregg is a high school grad-uate, and she had worked for several years as a secretary. In 1959, she became pregnant and terminated her secretarial employment. Thereafter, she devoted her full time to homemaking responsibilities. The parties' first child is somewhat retarded and will probably never be able to live on his own. A second child was born to the parties in 1965. Both children currently reside with Mrs. Gregg. At the time of the hearing, Mrs. Gregg had obtained two part-time jobs, one of which was temporary. These jobs were producing a net income of approximately $400 per month.

Mr. Gregg is also a high school graduate. He conducted a family mushroom business throughout the marriage. Originally he was a co-owner of the business in partnership with his mother, Sylvia Gregg. Later, he was a co-owner with her of the business which was reorganized as a corporation. Although the mushroom business prospered for several years, it appears that it is presently inactive due to the general decline in the domestic mushroom industry.

Mr. Gregg's father, Anson Gregg, died intestate on June 7, 1951. A parcel of land known as the Old Wilmington Road Farm, comprising approximately one hundred eleven acres, passed by operation of the intestacy laws to Mr. Gregg, his brother, and his sister, subject to a life estate in their mother, Mrs. Sylvia Gregg. Mr. Gregg and his brother deeded their interests back to their mother before or during 1956. There is little in the record as to the circumstances under which those transfers were made.

Sylvia Gregg gave Mr. and Mrs. Gregg six acres of land in 1963 on which Mr. Gregg built the marital residence. That six-acre tract was not part of the Old Wilmington Road Farm. Then, prior to 1974, Sylvia Gregg deeded about seven acres of the Old Wilmington Road Farm to Mr. Gregg's sister. It is unclear from the record whether Mr. Gregg's sister has given up her interest in the Old Wilmington Road Farm. If she has done so, there is no

record as to the terms under which she acted.

In any case, on May 23, 1974, Sylvia Gregg reconveyed the remainder interests in the Old Wilmington Road Farm to Mr. Gregg and his brother which they had conveyed to her in 1956. At that time, she reserved a life estate in herself. The deed states that, "The purpose of this deed is to return each of the Grantees' interest in the above-described property which the Grantor was holding for them by the hereinafter recited deeds."

Marital assets worth about $300,000 were divided by Family Court with the husband receiving about 37% and the wife receiving about 63%. However, the husband's valuable interest in the farm was not deemed to be a marital asset.

## I.

In concluding that Mr. Gregg's interest in the farm was not marital property as defined by 13 *Del.C.* § 1513(b)(1), the Family Court found that, "the reconveyance of the property was merely a formality to acknowledge Petitioner's interest in the real estate."

 The Delaware Code states that all property acquired after marriage is presumed to be marital property. 13 *Del.C.* § 1513(c). There are only three exceptions to that rule and these exceptions are defined in 13 *Del.C.* § 1513(b) in the following language:

(1) Property acquired in exchange for property acquired prior to the marriage;
(2) Property excluded by valid agreement of the parties; and
(3) The increase in value of property acquired prior to the marriage.

The burden is on the party seeking to exclude property acquired after the marriage from division as a marital asset to show that it falls within one of these three exceptions and is, therefore, not subject to division between the former spouses following divorce. *Frank G.W. v. Carol M.W.,* Del. Supr., 457 A.2d 715, 722–23 (1983); *E.C.W.*

*v. M.A.W.,* Del.Supr., 419 A.2d 934, 935 (1980).

Mrs. Gregg points out that the parties were married in 1957 and were not divorced until 1982. Since Mr. Gregg received the interest he now has in the property by deed in 1974 (after they were married), she argues that the property is marital property. Mrs. Gregg further asserts that the evidence does not support a finding by the trial court that the property falls within any one of the statutory exceptions to the marital property rule. She contends that a finding by Family Court "[t]hat the reconveyance of the property was merely a formality to acknowledge Petitioner's interest in the real estate" is not supported by the evidence and, in any event, does not bring the husband's interest within one of the exceptions listed in § 1513(b).

 Mr. Gregg responds by arguing that his interest was "acquired in exchange for property acquired prior to the marriage." 13 *Del.C.* § 1513(b)(1). He contends that the 1974 conveyance to him by Sylvia Gregg was "in exchange" for his conveyance more than 15 years earlier of approximately the same interest to her. However, it appears that Mr. Gregg has confused the act of returning property with the act of an actual exchange of property. A return of property conveyed away many years earlier is not an exchange within the meaning of 13 *Del.C.* § 1513(b)(1). As this Court has stated in earlier decisions, "The 'exchange' provision [of 13 *Del.C.* 1513(b)(1)] is intended to exclude from marital property only that which is 'swapped' for pre-marital assets." *Sayer v. Sayer,* Del.Supr., 492 A.2d 238, 239 (1985); *See also, E.C.W.,* 419 A.2d at 936.

 Mr. Gregg also looks to the language of the 1974 deed which stated that its purpose was "to return each of the Grantees' interest in the above-described property which the Grantor was holding for them by the hereinafter recited deeds." He contends that neither Mr. Gregg nor Sylvia Gregg intended in 1956 that Mr.

Gregg would transfer his equitable interest in the property to his mother, but rather they simply intended that he transfer bare legal title. It appears Mr. Gregg is arguing that the 1956 conveyance to his mother was subject to some sort of trust, with his mother to act as trustee for him and his brother. Apparently, however, the conveyance did not so state, and there is no contemporary evidence in the record to support the contention. The 1956 deed was not even introduced in evidence or made part of this record. Mr. Gregg did not have his mother testify concerning any facts which might support the conclusion that she had been holding this very valuable farm in trust for more than a dozen years. The record does not give adequate support to the trust contention.

■ In an attempt to avoid a ruling that his current future interest in the farm has some value as marital property, Mr. Gregg also points out that what he received by the 1974 conveyance from his mother was, in fact, a mere future interest in the Old Wilmington Road Farm, subject to a life estate in his mother. He refers to the case of *Frank G.W.*, 457 A.2d 715.

That case involved three trusts, two of which were created before the marriage and one of which became effective during the marriage. In each case the husband was given a future interest in the *corpus* of the trust. The *corpus* was paid to him during the marriage. The husband argued that since a future interest in the *corpus* of two of the trusts vested in him prior to the marriage, the *corpus* was not marital property. This Court disagreed and held that the *corpus* was marital property.

Mr. Gregg points out this Court reasoned that, "A future interest cannot be 'acquired' within the meaning of § 1513 as it has no possessory value ..." *Id.* at 727. If future interests (not yet reduced to possession) are incapable of being acquired within the meaning of 13 *Del.C.* § 1513(c), it could be argued that all future interests are to be ignored in the distribution of marital property. However, this Court did not so hold.

Rather, it merely held that a future interest possessed when the marriage took place did not make the trust *corpus* exempt from marital property status when the trust *corpus* came into a spouse's possession during marriage. The trust *corpus* was deemed to have been "acquired" during marriage because that was when the future interest was reduced to possession (even though the husband already had a vested future interest in some of the property before the marriage). 13 *Del.C.* § 1513(c).

This Court recognized that future interests have a separate present value and are themselves significant property assets. *Id.* at 723. This Court further said that the *corpus* has a separate value apart from and not derived from the value of the prior future interest. *Id.* at 725. While recognizing that each of these two components, the future interest in the *corpus* and the *corpus* itself, have independent value, the Court stated that, "[A] future interest has pecuniary value only in the period prior to the possession of the *corpus*; once the latter interest becomes possessory, the future interest has no value." It was in this context that the Court said a future interest could not be acquired within the meaning of § 1513 because it has no possessory value although it may have monetary worth. *Id.* at 726–27.

It is apparent that the Court's pronouncement that a future interest cannot be acquired within the meaning of § 1513 must be limited to the facts of the *Frank G.W.* case where, indeed, the future interest had ceased to exist and, therefore, no longer had any possessory value. The husband had already come into possession of the *corpus* before the case came to court, and it is clear that the previously possessed future interest had ceased to exist. However, since the husband did come into possession of the *corpus* during the marriage, the Court concluded that the entire *corpus* was marital property subject to equitable distribution under § 1513.

Therefore, the crucial question is whether the spouse came into possession of something of value during the marriage which the spouse still has and which is properly regarded as present marital property.

We did not read the opinion in the *Frank G.W.* case as saying that a future interest could never have value as a marital asset. Indeed, as noted above, this Court expressly stated that prior to possession of the *corpus*, the future interest had a value independent of the *corpus*.

█ Property interests not yet reduced to possession can be acquired during marriage within the meaning of § 1513, and if such an interest still exists at the time of a divorce, the interest is to be regarded as marital property. In the case of *Robert C.S. v. Barbara J.S.*, Del.Supr., 434 A.2d 383 (1981), the husband earned pension benefits during the marriage, but he would not become eligible to collect the pension until he reached a specified age and this would not occur until after the divorce. The Court ruled, however, that those benefits which were earned during the marriage were to be treated as marital property. The reason was that the benefits were found to be deferred compensation for services rendered during the marriage and a contractual right of the husband acquired by the husband during the marriage. Thus, it was held that since during the marriage the husband, as an employee, had come into possession of something of value, a right to future pension payments, marital property had been acquired.

█ In the case at bar, the husband acquired a future interest in the farm during the marriage. This future interest has a present value and will continue to have value until Mr. Gregg comes into actual possession of the land. *Frank G.W.*, 457 A.2d at 723; *DuPont v. DuPont*, Del.Ch., 160 A.2d 586 (1960). Under the circumstances, we hold that the value of this existing future interest must be treated as marital property.

## II.

In view of the Family Court's determination that the husband's interest in the farm property was not marital property, it was not necessary for that court to place a value on the property interest. However, that court went on to state that the reason it did not place any value on the property was because the expert witness testified he was unable to give an opinion on the value of the husband's remainder interest.

Family Court has broad discretion with respect to the division of marital property under 13 *Del.C.* § 1513. *Kathleen C.Q. v. Norman J.Q.*, Del.Supr., 452 A.2d 951, 954 (1982). However, the Family Court was in error in determining that the future interest in the farm had no value as a marital asset. In *Kathleen C.Q.*, this Court ruled that the spouse seeking division of a specific asset must first prove, by a preponderance of the evidence, that the asset is marital property. *Kathleen C.Q.*, 452 A.2d at 954. The applicant must next prove, again by a preponderance of the evidence, the value of that property. *Id.* It is only when the applicant fails to meet the first burden of proof that "[t]itle to the property shall govern its disposition." *Id.* at 954–55.

█ In this case, this Court has determined that the husband's future interest is marital property. We rule that Mrs. Gregg has satisfied her burden of proof on that issue. Insofar as the evidence of the value of that asset is concerned, the evidence supports a finding that the property was worth $833,000 as of the date of the hearing. However, the expert gave no opinion as to the fair market value of the remainder interest. Therefore, Mrs. Gregg has failed on her second burden of proof: She failed to establish the value of the future interest.

In *Kathleen C.Q.*, the husband asserted that the trial court was required to award the entire interest in the property in question to him because the wife had failed to prove the value of the interest in question. This Court rejected that contention. In-

stead, this Court affirmed the Family Court's award to the wife of a fifty percent interest in the property on a "when, as, and if" basis.

■ In the present case, the wife's failure to prove the value of the husband's present interest in the farm does not mean that the entire interest should be awarded to husband. This Court has determined that the case must be remanded to Family Court for a reconsideration of the division of the marital assets which will take into account, in accord with this Court's ruling, that the remainder interest in the farm is marital property. In that connection, it will become necessary for the Family Court to determine the value of that interest or to divide the interest in some equitable way between the parties without a specific evaluation. The Family Court could make a division of the interest without stating its value as was done by the Court in *Kathleen C.Q.* Alternatively, the Family Court could require that the record be supplemented on this one issue.

It is to be noted that pursuant to the State of Delaware, Department of Finance, Division of Revenue Tax Ruling 83–4, Table A, it is possible to place a present value on a remainder interest in property subject to a life estate in an eighty-two year old person.

This Court, therefore, remands this case to the Family Court for a division of the marital assets in light of this additional asset which was not previously regarded as marital property by the Family Court. Nothing this Court has said is intended to restrict the Family Court's exercise of its equitable power to make a new division of the marital property on remand in accordance with 13 *Del.C.* § 1513(a)(1–11) and with a view to the enlarged pool of marital property to be divided.

## III.

■ In 1977, Mr. Gregg made an investment in a tax shelter which resulted in an income tax deduction of $84,900. Much of the shelter was later disallowed by the tax authorities. The tax liability which resulted was $44,583 due to the United States Internal Revenue Service, and $15,812.42 due to the Delaware State Division of Revenue. The Family Court divided the tax liability between the parties, requiring each to pay one-half. The court reasoned, *inter alia,* that Mrs. Gregg had benefited from the tax shelter scheme by receiving alimony during the parties' eight-year separation period. On appeal, Mrs. Gregg argues that the Family Court abused its discretion in making this award because it failed to consider the involvement of each of the parties in creating the shelter, the relative financial positions of the parties, and the extent to which each benefited or failed to benefit from the tax saving which they thought the shelter was providing.

The parties separated in 1976. The shelter caused Mr. Gregg to take a tax deduction in 1977. During 1977 and continuing through 1982, Mr. Gregg paid Mrs. Gregg's living expenses and an additional $200 per week. The tax deduction contributed to the amount of funds Mr. Gregg had available to pay Mrs. Gregg. It was not error for the trial court to find that there was an indirect benefit to Mrs. Gregg from the tax shelter. In any case, they were both liable for the unpaid taxes.

■ The final property division involved an award of $53,150 in liquid assets to Mrs. Gregg. This sum included $20,000 in her bank account, stock listed as being worth $30,000 (held by Mr. Gregg pursuant to the Family Court's order staying proceedings on the disposition pending appeal), and a $3,150 tax refund. Mr. Gregg was awarded liquid assets in the amount of $52,321 which included $10,143 in his bank account, stock listed as being worth $19,678, and $22,500 Mr. Gregg had placed in trust for his son. Therefore, the parties were awarded roughly equivalent amounts of liquid assets from which to satisfy this tax liability.

Mrs. Gregg argues that since she was not involved in creating the shelter, she is

not responsible for the resultant tax liability. However, Mrs. Gregg was not ignorant of the shelter since she signed the tax return on which it was included.

The Family Court's ruling as to these matters was supported by the evidence, and there was no abuse of discretion. *Gregory J.M. v. Carolyn A.M.*, Del.Supr., 442 A.2d 1373, 1376.

### IV.

Mrs. Gregg argues that the Family Court abused its discretion in refusing to award her attorney's fees under 13 *Del.C.* § 1515. She alleges that the court failed to consider the total financial condition of each party. Section 1515 allows the court to order one party to pay the other party's costs and attorney's fees after the court considers the "financial resources of both parties."

■ The trial judge has broad discretion in assessing attorney's fees under the Divorce and Annulment Act. *Walter S.J. v. M. Lorraine J.*, Del.Supr., 457 A.2d 319, 327 (1983); *Kathleen C.Q.*, 452 A.2d at 955. The Family Court's rulings on attorney's fees will not be disturbed so long as there is evidence to support the court's findings of fact. *Kathleen C.Q.*, 452 A.2d at 955.

■ In the instant case, Mrs. Gregg was awarded $53,150 in liquid assets, as noted above. Of this, $30,197.50 is allocated for the tax liability discussed above. Until April of 1985, Mrs. Gregg received alimony. Thus, the remaining liquid assets, approximately $23,000, were available both for her support and to pay her attorney's fees. Mrs. Gregg was awarded, in addition to the marital residence, the five acres and mushroom growing houses attached thereto. She conceded at trial that she could earn income from the rental of these properties. Mrs. Gregg also earns about $400 a month from employment.

The Family Court clearly considered both parties' financial resources as required by § 1515. We find no abuse of discretion in the trial court's failure to award Mrs.

Gregg attorney's fees. *Kathleen C.Q.*, 452 A.2d at 955.

■ Mrs. Gregg also claims that the Family Court abused its discretion when it failed to award her attorney's fees by failing to consider Mr. Gregg's allegedly wilfull or negligent conduct in connection with these proceedings which she contends needlessly complicated these proceedings. This Court does not find evidence in the record to support Mrs. Gregg's charges. As an example, Mrs. Gregg cites Mr. Gregg's financial affairs as being disorganized and she emphasizes his lack of financial documentation. However, Mrs. Gregg "forgot" to bring her records and bankbooks to the trial and these documents would have assisted the court in determining her financial status.

■ Mrs. Gregg complains that Mr. Gregg further prolonged the litigation by submitting business as well as personal debts as part of his current financial condition. However, Mrs. Gregg was seeking an award of the business and the debts of that business were an issue in the case.

■ Mrs. Gregg also claims that Mr. Gregg needlessly complicated the litigation by attempting to remove money from the marital estate by setting up a trust for his son and designating himself as trustee. However, there is no evidence in the record that this was done to needlessly prolong the litigation, and, in any case, the trust funds were regarded as marital property and distributed as part of the husband's assets when the marital property was divided. Therefore, this Court cannot conclude on the record before it that the Family Court erred in failing to penalize the husband for wilfully or negligently complicating the proceedings.

### V.

■ Mrs. Gregg argues that the Family Court abused its discretion in ordering alimony for her for only six months and without a specific provision for periodic review. She complains that the court failed to con-

sider the length of time necessary for her to acquire sufficient training or education to enter the job market, the duration of the marriage, or Mrs. Gregg's age, physical, and emotional condition as required by 13 *Del.C.* § 1512(c)(2, 4 & 6).

The evidence would support a finding that Mrs. Gregg could regain sufficient skills to enter the job market in the Wilmington, Delaware area through training lasting approximately six months. In any case, the Family Court specifically noted that, "Respondent has done little or nothing to obtain employment even though many years have passed since the parties separated." In addition, the court noted that the assets awarded to Mrs. Gregg are such that she should not be dependent upon Mr. Gregg and should be self-supporting within six months.

As to the length of the marriage, although it would have been helpful if the court, in the section of its opinion dealing with alimony, had specifically detailed its consideration of all factors under 13 *Del.C.* § 1512(c), the findings required by that section are clearly implied from the terms of the alimony award and the factual context of this case. *G.S.G. v. P.S.G.,* Del.Supr., 412 A.2d 319, 323 (1980). The court noted within its opinion the length of the parties' marriage. It can also be clearly implied from the terms of the award and the facts of the case that the court did not believe her age, physical, or emotional condition would render her unable to find employment. The court mentioned twice in its opinion that Mrs. Gregg has made no significant efforts to obtain employment during the seven years of the parties' separation.

■■■ A purpose of an alimony award to a dependent party is to encourage that party to become self-supporting. *Kathleen C.Q.,* 452 A.2d at 953. The burden is on the spouse seeking alimony to prove dependency and an inability to gain support through appropriate employment. 13 *Del.C.* § 1512(b); *Ann Marie H. v. Joseph J.H.,* Del.Supr., 456 A.2d 1233, 1234 (1983).

In light of Mrs. Gregg's somewhat limited effort to become independent and self-supporting, this Court cannot conclude that the Family Court abused its discretion in limiting the alimony award to six months.

### VI.

■■■ Mr. Gregg purchased stock worth $22,500 and gave it to his son under the Uniform Gift to Minors Act. The Family Court found that since the conveyance did not occur until the divorce was imminent and since Mrs. Gregg was not consulted, the value of this asset was to be treated as though it were marital property rather than the son's property. We find no error in the treatment of the stock under the circumstances of this case.

### VII.

■■■ In its original order of October 4, 1984, the Family Court awarded Mrs. Gregg bank accounts with deposits the court believed to be valued at $59,410. At a later Family Court office conference, the attorneys presented important oral arguments on motion for reargument. At that time, Mrs. Gregg's attorney argued that Mrs. Gregg had only approximately $20,000 remaining in those accounts. As a result, the Family Court apparently believed that it had divided assets which were no longer in existence and, on February 13, 1985, the court modified its original award so as to require Mr. Gregg to transfer to Mrs. Gregg stock worth $30,000, which had originally been awarded to him.

■■■ Mr. Gregg argues that there was never any testimony concerning the amount of money Mrs. Gregg retained in the accounts in question. Therefore, he contends that the opinion of February 13, 1985 is not supported by the record. This Court has found no support in the record for a finding that Mrs. Gregg had deposits of only $20,000 available for distribution as marital assets. There is also no evidence that would justify a determination that the recent disappearance of such funds should

result in their removal from the distribution schedule. Therefore, this last minute adjustment in the property distribution must be set aside. However, this Court recognizes that the entire issue of the division of marital property must be considered anew by the Family Court on remand, and the Family Court will be free to consider the entire existing record in deciding upon a proper division of the marital assets.

\* \* \*

For the foregoing reasons, the judgment of the Family Court is affirmed in part and reversed in part, and this case is remanded to the Family Court for further proceedings not inconsistent with this opinion.