IN THE SUPREME COURT OF THE STATE OF DELAWARE

PAUL MACINTOSH, JR.,[1]     §
                            §    No. 345, 2017
    Respondent-Below,       §
    Appellant,              §    Court Below: Family Court
                            §    of the State of Delaware
    v.                      §
                            §    C.A. No. CK14-02603
ISABELLA MACINTOSH,         §
                            §
    Petitioner-Below,       §
    Appellee.               §

Submitted: March 7, 2018
Decided:   April 11, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## ORDER

This 11th day of April, 2018, having considered the briefs and the record below, it appears to the Court that:

(1)     Paul ("Husband") and Isabella ("Wife") MacIntosh have each appealed from a Family Court order awarding alimony to Wife and dividing their marital property. After a careful review of the record, we agree with the Family Court's disposition of all issues and affirm.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

## Background

(2)    Husband and Wife met in South Korea while Husband was serving in the United States Air Force. They married in Texas on December 7, 1990. Husband is fifty-four years old and served in the Air Force until 2005. He is now employed at Dover Air Force Base as a civilian and expects to retire by age fifty-eight. His yearly income, including a military pension, is about $65,552. Wife is fifty-five years old and is a United States citizen born in South Korea. She has a sixth-grade Korean education and limited English proficiency. Wife was financially dependent on Husband throughout their twenty-four years of marriage. She did not have access to their bank accounts; instead, Husband would give her a $350 allowance per pay period for expenses. She stayed home to raise the couple's two children, working occasionally as a seamstress on military uniforms for Husband's acquaintances. For the last five years she has worked as a part time daycare assistant, with a yearly income of about $13,700.

(3)    The parties separated on September 26, 2014, but remained in the same household. Husband filed for divorce on October 7, 2014. When Wife retained a divorce attorney in December 2014, Husband stopped providing her the $350 allowance and closed a bank account containing $2,000 in savings from her part time job. Wife filed for interim alimony on January 28, 2015, and the court granted her monthly alimony of $1,750. The parties stipulated to lower the alimony to $1,300

and required Husband to continue paying Wife's expenses for car insurance, cell phone, and household necessities.  The parties divorced on April 16, 2016.

(4)    During their marriage, Husband paid all expenses through a Dover Federal Credit Union bank account ("Account #1006").  His paychecks and military pension were deposited into this account, and he gave Wife her $350 allowance from the account.  At the time of separation, the account had a $34,079 balance.  Husband did not allow Wife to use money in the account to retain an attorney, forcing her to borrow from family and friends.  In March 2016, Husband transferred $10,000 from Account #1006 into a new account in his name, where he began depositing his income.[2]  When dividing the assets, the court determined that Husband paid roughly $83,691.66 in household expenses during separation.  The court concluded that the $34,079 balance of Account #1006 was not subject to division because Husband used the account to pay household expenses and some of Wife's personal expenses

---

[2] After this withdrawal, Wife filed a motion for interim relief, and the court issued an order prohibiting Husband from further depleting the account.  Husband, however, continued to use the account over the next six months to pay his attorney's fees and personal credit card debt, which included vacation and entertainment expenses spent on his girlfriend.  App. to Answering Br. at 500–09 (Trial Tr., [*MacIntosh*], No. CK14-02603, at 142–51 (Del. Fam. Jan. 9, 2017)).  During this time, he saved $10,000 more in his new account and contributed $800 a month into his retirement account.  He did not use the new account for Wife's benefit or any household expenses. *Id.* at 239, 253 (Bank Statements); *id.* at 549–50 (Trial Tr. 191–92).  On appeal, Wife argues the court erred in refusing to divide the account because Husband depleted it in violation of the court's order.  However, Wife did not raise this issue at trial or in her written closing argument, and thus we decline to address it here.

3

during separation. However, the court ordered Husband to pay Wife her attorney's fees and her retroactive share of his military pension.[3]

(5) Husband maintained a second Dover Federal Credit Union bank account in his name to deposit rental proceeds from a property he purchased with his mother ("Account #7000").[4] At the time of separation, the account had a balance of $25,093. After separation, in February 2016, Husband made two payments of $10,000 from the account to put toward their children's student loans. Husband never discussed these payments with Wife, stating, "I did not talk to her about money."[5] He testified, however, that "she knew it, upfront, that that's what the house was for."[6] The parties' adult daughter testified by phone that she "was not surprised" that he made the payment and that "she anticipated that her parents would give her the money for the payment because of prior discussions."[7] Thus, the court excluded the two $10,000 payments from the account as non-marital property, and divided the remaining balance of $5,093.[8]

---

[3] Am. Order, [*Macintosh*] v. [*Macintosh*], CK14-02063, at 2–3, 10 (Del. Super. July 31, 2017).
[4] Husband's mother later deeded him her interest in the property to benefit "Husband and the parties' children." Because the interest was not for Wife's benefit, the court granted Wife only her share of Husband's $30,000 original half-ownership interest. *Id.*
[5] App. to Answering Br. at 469 (Trial Tr. 11).
[6] *Id.* at 470 (Trial Tr. 112).
[7] Am. Order, at 10.
[8] *Id.*

(6) Wife is unable to read or write English and has little English-speaking ability. She required an interpreter at trial. She attempted to take English classes but testified that she did not finish them because she had young children at home and because Husband hindered her ability to attend.[9] Wife also testified that she did not obtain employment when she moved to the United States because Husband did not want her to.[10] She testified that her lack of a GED prevented her from obtaining retail or other employment. Even her daycare position was limited to part time work and one-year contracts because she was unable to pass a certification exam, despite attempting to study with the help of a friend.[11] The court found Wife was unsuccessful in finding full time employment due to her sixth-grade Korean education, lack of a GED or diploma, and limited English proficiency. But, the court attributed Wife full time employment at her hourly wage of $8.25 and granted her permanent alimony of $2,200 per month.[12]

(7) The court issued its property division order on June 5, 2017. On June 14, 2017, Wife filed a motion for clarification regarding the amount of alimony and the timing of payments. The court issued an amended ancillary order on July 31, 2017. Husband and Wife both appeal from the Family Court's orders. Husband

---

[9] App. to Answering Br. at 695 (Trial Tr. 8).
[10] *Id.* at 696 (Trial Tr. 9) ("Q. Did you ask [Husband] if you could have a job? A. Yes. Q. What was his reaction? A. He said, 'No.'").
[11] App. to Opening Br. at 186–89 (Pretrial Tr., [*MacIntosh*], No. CK14-02603, at 11–14 (Del. Fam. July 1, 2016)).
[12] Am. Order, at 13, 16.

5

appeals the court's decisions granting Wife a retroactive share of his military pension and permanent alimony. Wife appeals the court's decisions granting Husband the entirety of Account #1006 and dividing Account #7000 based on the amount of $5,093. In addition, Wife argues that Husband's appeal was untimely because her motion for clarification did not toll the statute of limitations.

(8)     "On appeal from a Family Court decision awarding alimony, we review the facts and the law, as well as the inferences and deductions made by the trial judge."[13] We review questions of law de novo. If the court correctly applied the law, we review for an abuse of discretion, determining "whether the Family Court's decision was arbitrary or capricious."[14] "We will not disturb findings of fact unless they are clearly wrong and the doing of justice requires their overturn."[15]

## Timeliness of Husband's Appeal

(9)     Husband filed his appeal eighty-one days after the Family Court's original order but within thirty days of the amended order responding to Wife's motion for clarification. Under Supreme Court Rule 6, a party has thirty days from the filing of a final order to file an appeal.[16] A motion for clarification typically does

---

[13] *Lankford v. Lankford*, 157 A.3d 1235, 1241 (Del. 2017).
[14] *Id.* at 1241–42.
[15] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).
[16] Supr. Ct. R. 6(a)(i) ("A notice of appeal shall be filed in the office of the Clerk of this Court as follows: (i) Civil Appeals. Within 30 days after entry upon the docket of a judgment, order or decree . . . .").

6

not toll the time period in which to file an appeal. If the motion is substantive, however, it is treated as a motion for reargument and the time for filing an appeal is tolled.[17] In *Woods v. Woods*, this Court held that the husband's motion for clarification did not toll the appeal period because "even given a generous reading, the motion could not be construed as a motion for reargument."[18] The husband's motion in *Woods* sought clarification whether the husband had to pay 50% of his pension or use the *Cooper* formula with a 50% multiplier. The court found the husband's motion for clarification "did not take issue with any substantive aspect of the Family Court's order."[19] Rather, "the clearly expressed intent of the Property Division Order as a whole," showed the mistake was "an obvious typographical error."[20] In addition, the Court found that "[t]he Clarification Order did not replace, or substitute for, the Property Division Order in any way."[21] Thus, the Court held the appeal period was not tolled and dismissed the case.

---

[17] *Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969).
[18] 146 A.3d 357, 2016 WL 4427198, at *2 (Del. Aug. 19, 2016) (TABLE)).
[19] *Id.*
[20] *Id.*; *see also id.* at *1 n.5 ("In fact, in discussing the appropriate division of the parties' respective retirement and pension accounts, the Family Court twice indicated that only the pension accounts were subject to the *Cooper* formula. . . . In a later paragraph, however, the Family Court mistakenly indicated that '[t]he parties' *retirement* accounts shall be divided by the *Cooper* formula.'").
[21] *Id.* at *2.

(10)   In her motion, Wife sought clarification of the final alimony amount.[22] The concluding sentence in the court's original order stated that "Wife is dependent on Husband for $2,062 per month."[23]   But when listing Husband's income and expenses, the court listed alimony as $2,200.[24]   In addressing the motion, the court noted that Wife "point[ed] out some language that was less than clear in the Order. I agree."[25]   The Court then responded to the motion specifying the alimony amount and issued an amended ancillary order to change the concluding sentence to state, "Wife is dependent on Husband for $2,200 per month."[26]

(11)   Although a close issue, we find Wife's motion for clarification was substantive and construe it as a motion for reargument.   Unlike the typographical error addressed in *Woods*, the correct amount of alimony was not obvious from the "clearly expressed intent" of the order.[27]   The Family Court offered no explanation for why it chose the higher alimony amount, merely stating at oral argument that "the one in the body is the one I intended"—referring to the $2,200 amount.[28]

---

[22] App. to Opening Br. at 940 (Mot. for Clarification, [*MacIntosh*], No. CK14-02603, at 4 (Del. Fam. June 14, 2017).  Wife also sought clarification on the timing of payments, but this was not a substantive issue.

[23] App. to Answering Br. at 929 (Order, [*MacIntosh*], No. CK14-02603, at 16 (Del. Fam. June 5, 2017)).

[24] *Id.* at 927 (Order, at 14).

[25] *Id.* at 1058 (Order on Mot. for Clarification, [*MacIntosh*], No. CK14-02603, at 2 (Del. Fam. July 31, 2017)).

[26] Am. Order, at 16.

[27] *Woods*, 2016 WL 4427198, at *2.

[28] App. to Answering Br. at 1035 (Tr. of Mot. for Clarification Proceedings, [*MacIntosh*], No. CK14-02063, at 74 (Del. Fam. July 20, 2017)).

Without the court's clarification, there was no way for the parties to know the amount Husband was required to pay. In addition, the Family Court in *Woods* issued only a form order attached to the wife's response, while the court in this case issued an amended property division order—replacing its original order. Thus, Wife's motion for clarification tolled the appeal period and Husband's appeal was timely filed.

## Husband's Arguments on Appeal

(12) Husband first argues that the court abused its discretion by awarding Wife a retroactive share of his military pension. He contends Wife was already credited with her share of his military pension because the pension income was deposited into Account #1006, which he used to pay their household expenses. Thus, according to Husband, the court's decision "created a double dip that allowed Wife to enjoy both the benefit of Husband's use of the military retired pay to pay Wife's expenses while collecting the same funds a second time in the form of the retroactive military retired pay award."[29]

(13) We disagree. "[T]he Family Court has broad discretion in the division of marital property, in general, and in disposing of pension benefits, in particular."[30] While Husband paid the household expenses from the same account where he

---

[29] *Id.* at 17.
[30] *Walker v. Walker*, 89 A.3d 478, 2014 WL 1365806, at *1 (Del. Apr. 4, 2014) (TABLE).

deposited his military pension, he had enough income deposited to the account to pay the household expenses without using the pension income. The court viewed the military pension and account assets as separate marital property, and therefore, the decision to award Wife her retroactive share of the military pension was not an abuse of discretion.[31]

(14) Husband next argues that the court erred in awarding Wife permanent alimony. In evaluating Wife's alimony request, the court considered the factors in 13 *Del. C.* § 1512(c), including the parties' financial resources and employment, and noting Wife's sixth-grade Korean education, lack of GED and diploma, limited English-speaking ability, and difficulty in obtaining full time employment. Based on these factors, the court concluded that Wife was dependent on Husband and entitled to permanent alimony.

(15) On appeal, Husband contends that Wife should receive no alimony because she did not present sufficient evidence that she was seeking full time employment or vocational training as required by 13 *Del. C.* § 1512(e). Husband acknowledges that Wife's "employment prospects were limited by her lack of English proficiency and lack of an educational credential," but argues that she still

---

[31] *See L.H. v. A.H.*, 2017 WL 4335167, at *6 (Del. Fam. July 14, 2017) (distinguishing money spent on household expenses from the money earned through the husband's military pension); *cf. Forrester*, 953 A.2d at 185 (explaining that pensions are "subject to equitable division").

10

had an obligation to pursue vocational training in English or in obtaining her GED.[32]

In addition, Husband argues that "the Family Court's attribution to Wife with full time income does not excuse her from an obligation to either pursue full time employment or the education required to obtain such employment."[33]

(16)   Under 13 *Del. C.* § 1512(e), "[a]ny person awarded alimony has a continuing affirmative obligation to make good faith efforts to seek appropriate vocational training, if necessary, and employment."   Section 1512(e) does not require *full time* employment.  The Family Court has awarded alimony even when the party seeking alimony is working part time.[34]  "The burden is on the spouse seeking alimony to prove . . . an inability to gain support through appropriate employment."[35]  "The Family Court has broad discretion in determining an alimony award," and its decision will be upheld if: (1) its factual findings are supported by the record; (2) it properly considered the statutory factors in 13 *Del. C.* § 1512(c);

---

[32] *Id.* at 33–34.

[33] *Id.* at 27.

[34] *Saldanha v. Saldanha*, 918 A.2d 339 (Del. 2006) (granting alimony even though the wife was working part time); *Gray v. Gray*, 503 A.2d 198, 199 (Del. 1986) (same); *Adelaide A.G. v. Peter W.G.*, 458 A.2d 702, 703 (Del. 1983) (same); *Gioffre v. Beste*, 2001 WL 1669286, at *1 (Del. Fam. Apr. 9, 2001) (same); *Calder v. Calder*, 588 A.2d 1142 (Del. 1991) (same); *Forbes v. Forbes*, 1998 WL 1035243, at *3 (Del. Fam. Dec. 2, 1998), *aff'd*, 738 A.2d 237 (Del. 1999) (same).

[35] *Gregg v. Gregg*, 510 A.2d 474, 483 (Del. 1986).

and (3) its "explanations, deductions and inferences are the product of a logical and deductive reasoning process."[36]

(17)   Wife is fifty-five years old, has a sixth-grade Korean education, has no GED or high school diploma, speaks little English, and did not work the majority of the marriage.  She could not obtain full time employment at the daycare because she was unable to understand the material needed to pass a certification exam, even though she attempted to study with the help of a friend.  Wife testified that she only obtained the daycare position through the help of a friend, and Husband conceded that he filled out her daycare application when she applied.[37]  Wife presented a witness who testified that she helped Wife look for other jobs, but that all the jobs required a GED or high school diploma.[38]  The court made the factual finding that Wife "has been unsuccessful in obtaining full time employment."[39]  We find the Family Court's factual determination fully supported by the evidence.

---

[36] *Wright v. Wright*, 49 A.3d 1147, 1153 (Del. 2012); *see also Lankford*, 157 A.3d at 1242–43 ("There is no requirement that the Family Court equally weigh each factor.  Instead, the Family Court must analyze and balance the factors to reach a prudent alimony award that is fair to both parties.").

[37] App. to Answering Br. at 696 (Trial Tr. 9); *id.* at 558–59 (Trial Tr. 200–01).

[38] *Id.* at 657–58 (Trial Tr. 299–300).

[39] Am. Order, at 13; *cf. D.A.H. v. L.A.H.*, 2004 WL 3245787, at *8 (Del. Fam. Nov. 18, 2004) (finding that "no credible evidence was presented to support Wife's claim of being unable to work" but granting alimony even though she was unemployed); *MW v. SW*, 2001 WL 1773921, at *14 (Del. Fam. July 20, 2001), *opinion clarified*, 2002 WL 32101232 (Del. Fam. Nov. 14, 2002) (finding that the wife was appropriately employed and granting alimony because "[a]lthough Husband claim[ed] that Wife could find work as a bank teller earning $19,000 per year, he did not hire a vocational rehabilitation expert to evaluate Wife nor did he offer any expert testimony at trial regarding Wife's earning capacity" and noting that "Wife took a fifteen-year hiatus from the

(18) Wife's circumstances are similar to the wife in *Gioffre v. Beste*.[40] In

*Gioffre*, upon a motion to terminate or modify alimony, the Family Court analyzed

the wife's employment under § 1512(e).[41] She was forty-eight years old, was a

homemaker a majority of the marriage, did not work, had limited training for

employment, and was unable to pass skills tests needed to increase her marketability.

She was working an average of twenty-four hours a week at $9.00 an hour. Because

there was no evidence that she was working as many hours as she was capable of,

the court found she was underemployed. But, the court did not deny her alimony—

it instead imputed to her a full time salary based on her $9.00 hourly wage and used

that figure to calculate her alimony. The same happened here. The court attributed

Wife with full time employment at her hourly wage of $8.25 and used that sum to

determine alimony.[42] We do not endorse a rule that in every case it is appropriate to

impute to a spouse full time employment when part time employment is the best that

workforce to raise the parties' two sons and that . . . Wife has no post-high school education"). Husband relies on *In re C.M.*, but the case is distinguishable because the wife in *In re C.M.* made no attempt to seek any employment, and Husband's expert testified that she was capable of working. 2011 WL 5345418, at *9. In the present case, Wife is employed part time and actively sought full time employment. While Wife did not testify that she actually applied to full time work during separation, there is sufficient factual evidence to support the court's conclusion that Wife was unable to find more lucrative employment. *See* App. to Opening Br. at 184 (Trial Tr. 78).

[40] 2001 WL 1669286.

[41] *Id.* at *3.

[42] *Cf. Downing v. Downing*, 2000 WL 33403043 (Del. Fam. Feb. 1, 2000) (finding the wife could not obtain full time employment due to language difficulties and health problems, but attributing her a full time salary based on her intelligence and trainability and awarding alimony).

can be done. In this case, however, the Family Court did not abuse its discretion in awarding Wife alimony in the amount set by the court.

## Wife's Arguments on Appeal

(19) Wife first argues the court erred in dividing Account #7000 by assigning a value of $5,093 and not $25,093, because she did not know of or approve the two $10,000 payments Husband made toward their children's student loans. The Family Court found that the daughter's testimony that she was not surprised by the payments corroborated Husband's position that Wife "knew and agreed" to make the payments. Thus, the court divided the amount by $5,093. On appeal, Wife argues that she was not privy to the decision and thus the account should be divided at the amount of $25,093.

(20) In reviewing the Family Court's determination, "this Court will not substitute its own opinion for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process."[43] Nor will it substitute its opinion "[w]hen the determination of facts turns on the credibility of the witnesses who testified under oath before the trial judge."[44] While Wife testified that she did not know or approve of the payments, Husband testified that "she knew it, upfront," that the proceeds

---

[43] *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[44] *Walker*, 2014 WL 1365806, at *1.

14

from the house were intended to be used for their children's education.[45]  In addition, Husband's mother deeded her interest to Husband for the benefit of the parties' children, and their daughter testified that she was not surprised by the payments. Thus, there is sufficient factual evidence in the record to support the court's decision to divide $5,093 instead of $25,093 between the parties.[46]

(21)  Lastly, Wife argues that the Family Court abused its discretion in declining to divide the balance of Account #1006 at separation.  The Family Court refused to divide the account because Husband used the balance "to pay for the parties' household expenses including Wife's personal expenses for the past 29 months [between separation and divorce] that Wife resided in the marital home."[47] On appeal, Wife argues that because the court used Husband's income to determine the amount of interim alimony, Husband was required to pay the alimony out of "his current income as he received it, not out of the parties' marital savings account."[48] She notes that Husband had sufficient income to pay the parties' expenses without using the balance in the joint account.  In addition, Wife argues that the court's factual finding that Husband spent $83,691.66 on household expenses was incorrect.

---

[45] App. to Answering Br. at 470 (Trial Tr. 112).

[46] Wife also argues the court erred by allowing their daughter to testify by phone and not in-person "for such a critical issue of fact."  Answering Br. at 26.  However, Wife offers no support for this proposition and fails to show how she would have further challenged her daughter's credibility had her daughter been there in person.

[47] Am. Order, at 10.

[48] Opening Br. at 33; App. to Opening Br. at 514–15 (Stipulation for Interim Alimony, [*MacIntosh*], No. CK14-02603, at 1 (Del. Fam. July 31, 2015)).

She explains, "[i]f the Court makes a specific finding that the funds in an account were used to benefit the parties, the Court is obligated to make a determination of what expenses were paid to benefit the parties and apply the funds used against the expenses paid."[49] She provides a detailed list of the financial transactions that she argues the court should not have included in its calculation.[50]

(22) In response, Husband states that "Wife's argument stems from the mistaken belief that the Family Court is obligated as a matter of law to conduct a mathematical, expenditure-by-expenditure analysis of Husband's post-separation spending."[51] Husband argues that "[d]espite Wife's assumption to the contrary, the Family Court is not obligated to attribute a party with post-separation withdrawals."[52] Thus, he argues, the court did not abuse its discretion in finding that his "use of the funds in the 1006 account was reasonable" and that "it would be inequitable" to divide the account.[53]

(23) "[T]here is a broad definition of marital property and broad discretion vested in the Family Court to assign any of that property to either or both of the spouses."[54] "The major statutory vehicle by which that purpose is to be

---

[49] Answering Br. at 9.
[50] *Id.* at 33–35 n.1.
[51] Reply Br. at 37.
[52] *Id.* at 38.
[53] *Id.*
[54] *J.D.P. v. F.J.H.*, 399 A.2d 207, 210 (Del. 1979).

accomplished is [13 *Del. C.* § 1513], which vests broad power in the Family Court to 'equitably divide . . . the marital property . . . in such proportions as the Court deems just after considering all relevant factors.'"[55]  The court was entitled to base its decision on principles of equity and not an expense-by-expense analysis of the post-separation withdrawals.[56]  The court used its "broad power" to divide each of the parties' assets, including this account, after carefully considering the factors in § 1513.  The result was neither inequitable or disproportional.[57]  Thus, the Family Court did not abuse its discretion.[58]

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[55] *Id.* (quoting 13 *Del. C.* § 1513); *see also Glanden v. Quirk*, 128 A.3d 994, 1002 (Del. 2015) ("The weighing of the various factors is uniquely within the province of the Family Court . . . .").
[56] *Wife W. v. Husband W.*, 307 A.2d 812, 813 (Del. Super. 1973), *aff'd*, 327 A.2d 754 (Del. 1974) ("[T]he Supreme Court has recognized that this Court has been granted 'equitable' powers with respect to the division and allocation of marital property.").
[57] *See Mays v. Mays*, 552 A.2d 858, 1988 WL 141148, at *2 (Del. Nov. 23, 1988) (TABLE) ("The trial judge has broad discretion in respect to valuations. . . . Although the date selected for the valuation was advantageous to Husband, the overall division cannot be said to be inequitable under all the circumstances.") (internal citations omitted).
[58] This standard applies "even though independently we might have reached different conclusions." *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).